RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 16a0158p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

BRANDON HEFFERAN; SABINE HEFFERAN,

> *Plaintiffs-Appellants,*

*v.*

No. 15-3619

ETHICON ENDO-SURGERY INC.; JOHNSON & JOHNSON,

> *Defendants-Appellees.*

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 1:14-cv-00911—Timothy S. Black, District Judge.

Argued: March 16, 2016

Decided and Filed: July 8, 2016

Before: BOGGS, and ROGERS, Circuit Judges; and BERG, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Sara Ann Strickland, MORELLI RATNER LAW FIRM PLLC, New York, New York, for Appellants. David F. Abernethy, DRINKER, BIDDLE & REATH LLP, Philadelphia, Pennsylvania, for Appellees. **ON BRIEF:** Adam E. Deutsch, MORELLI RATNER LAW FIRM PLLC, New York, New York, for Appellants. David F. Abernethy, DRINKER, BIDDLE & REATH LLP, Philadelphia, Pennsylvania, Susanne M. Cetrulo, CETRULO MOWERY & HICKS, PSC, Edgewood, Kentucky, for Appellees.

---

[*]The Honorable Terrence G. Berg, United States District Judge for the Eastern District of Michigan, sitting by designation.

1

————————————

**OPINION**

————————————

BOGGS, Circuit Judge.    Brandon and Sabine Hefferan, an American husband and German wife, have lived together in Germany since 2002.  They seek damages for complications that arose when a surgical stapler manufactured by American corporation Ethicon Endo-Surgery allegedly malfunctioned during a surgery that Brandon Hefferan underwent in Germany.  The district court granted Ethicon's motion to dismiss on the ground of forum non conveniens in favor of litigating in Germany.  That decision was not an abuse of the court's discretion.  We therefore affirm.

I

Since 2002, Brandon and Sabine Hefferan have lived as a married couple in Germany.  In 2012, complications arose during a surgery that Brandon Hefferan underwent there.  As a result, he has allegedly endured twenty follow-up surgeries and sustained severe permanent injuries.  The Hefferans point the finger at a surgical stapler used during his initial procedure, which they claim malfunctioned.  The stapler was manufactured in Mexico by Ethicon Endo-Surgery, which is incorporated and headquartered in Ohio.

In 2014, the Hefferans filed suit in the District of New Jersey against Ethicon and its sole shareholder Johnson & Johnson, which is incorporated and headquartered in New Jersey (collectively "Ethicon").  Ethicon moved to dismiss based on forum non conveniens.  Instead of ruling on the motion, the New Jersey court transferred the case to the Southern District of Ohio.  The Hefferans filed an amended complaint in the Ohio federal court stating claims for negligence, loss of consortium, and violations of Ohio product-liability law.  Ethicon again moved to dismiss on forum non conveniens grounds in favor of proceeding in Germany.  The district court granted the motion and the Hefferans appealed.

II

"Under the common law doctrine of forum non conveniens, a district court may decline to exercise its jurisdiction, even though the court has jurisdiction and venue." *Rustal Trading US, Inc. v. Makki*, 17 F. App'x 331, 335 (6th Cir. 2001) (quotation marks omitted). Forum non conveniens dismissal involves a three-step analysis. After the court determines the degree of deference owed the plaintiff's forum choice, the defendant carries the burden of establishing an adequate alternative forum and showing that the plaintiff's chosen forum is unnecessarily burdensome based on public and private interests. *Id.* at 335–36; *Zions First Nat'l Bank v. Moto Diesel Mexicana, S.A. de C.V.*, 629 F.3d 520, 523–24 (6th Cir. 2010).

We review a district court's forum non conveniens determination for abuse of discretion. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981). To overturn, we must have "a definite and firm conviction that the trial court committed a clear error of judgment." *Logan v. Dayton Hudson Corp.*, 865 F.2d 789, 790 (6th Cir. 1989). In forum non conveniens cases, the district court's decision deserves substantial deference when the court has considered all relevant public- and private-interest factors, and has balanced those factors reasonably. *Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 364 (6th Cir. 2008).

The Hefferans appeal the grant of Ethicon's forum non conveniens motion on three grounds. They contend that: (1) their choice of forum was not accorded proper deference; (2) Germany is inadequate as an alternative forum; and (3) the court erroneously weighed the public- and private-interest factors. For reasons that follow, we uphold the district court's order.

A

Since each forum non conveniens case "turns on its facts," the Supreme Court has "repeatedly rejected the use of *per se* rules in applying the doctrine." *Am. Dredging Co. v. Miller*, 510 U.S. 443, 455 (1994) (quotation marks omitted). Nonetheless, we have found useful a few basic observations about a plaintiff's choice of forum. When a domestic plaintiff initiates a suit in his home forum, that choice is normally entitled great deference because it is presumptively convenient for the plaintiff. *Zions*, 629 F.3d at 523–24. In contrast, a foreign

plaintiff's forum choice is usually accorded less deference because the assumption of convenience is "much less reasonable." *Piper Aircraft*, 454 U.S. at 256.

"In general, the standard of deference for a U.S. plaintiff's choice of a home forum permits dismissal only when the defendant 'establishes such oppressiveness and vexation to a defendant as to be out of all proportion to plaintiff's convenience, which may be shown to be slight or nonexistent.'" *Duha v. Agrium, Inc.*, 448 F.3d 867, 873–74 (6th Cir. 2006) (quoting *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947)) (alterations omitted). Although descriptively accurate and useful in many cases, that is not an unyielding rule that district courts must apply with equal force in every situation. Indeed, the *Duha* court distinguished a case where the "somewhat attenuated" connection of an American plaintiff to the United States justified less deference to his forum choice. *Id.* at 875.

The deference normally accorded an American plaintiff's forum choice is based on the premise that holds in some, but not all, cases that the decision to bring suit in one's home forum is a matter of convenience. *Piper Aircraft*, 454 U.S. at 255–56 ("When the home forum has been chosen, it is reasonable to assume that this choice is convenient."); *Koster*, 330 U.S. at 524 (defendants must establish "oppressiveness and vexation . . . out of all proportion to plaintiff's convenience"). Yet "[c]itizenship and residence are" but "proxies for convenience." *Piper Aircraft*, 454 U.S. at 256 n.24 (stating reasoning of *Pain v. United Techs. Corp.*, 637 F.2d 775, 797 (D.C. Cir. 1980)). Although useful, they are indirect (and sometimes imperfect) estimates of convenience. Underlying the convenience presumption is a concern that defendants will uproot plaintiffs as a form of litigation strategy. *See id.* at 255 n.23 The degree of deference owed a plaintiff's forum choice will inevitably vary with circumstances, even among plaintiffs who claim the United States as home. As one circuit has put it, the greater the plaintiff's connection to the United States "and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be for the defendant to gain dismissal for *forum non conveniens*." *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 72 (2d Cir. 2001) (en banc); *see also Kisano Trade & Invest Ltd. v. Lemster*, 737 F.3d 869, 876 (3d Cir. 2013).

This sliding convenience scale explains the disparity in deference that we have accorded the forum choices of differently situated American plaintiffs. In *Kryvicky v. Scandinavian Airlines System*, for example, an American who had been abroad for at least eight years was living in Spain where her husband died in a plane crash. 807 F.2d 514 (6th Cir. 1986). After reestablishing United States residency, she brought a wrongful-death action against an American company and a foreign company. Although the court gave Kryvicky's choice of home forum greater deference than if she were foreign, it upheld the district court's forum non conveniens dismissal. *Id.* at 517. In a later case, *Duha v. Agrium*, we noted that Kryvicky's "actual ties to the home forum were much weaker" than those of an American plaintiff on a two-year work assignment abroad who maintained United States residency. 448 F.3d at 875.

The district court acted within its discretion when it concluded that the Hefferans' forum choice is entitled to less deference than those of American plaintiffs living in the United States. A person's true home, the centuries-old concept of domicile, requires physical presence and intent to remain: that is, "residence at a particular place accompanied with positive or presumptive proof of an intention to remain there for an unlimited time." *Mitchell v. United States*, 88 U.S. 350, 352 (1874) (citation omitted); *see also* Restatement (Second) of Conflicts § 15(2) (1971) (domicile of choice requires "physical presence" and "an attitude of mind"); Black's Law Dictionary 592 (10th ed. 2014). Once established, domicile continues until it is superseded. *See* Restatement (Second) of Conflicts § 19. The Hefferans advise that they "may move back to the United States." Yet unlike the *Duha* plaintiff who temporarily worked abroad while maintaining United States residency, or even the *Kryvicky* plaintiff who lived abroad for at least eight years before reestablishing United States residency, the Hefferans are still domiciled in Germany and had been for twelve years when they filed suit. What is more, Sabine Hefferan is a German citizen whose only apparent connection to the United States was a brief stint as a foreign exchange student over a dozen years ago. The Hefferans have not shown that their decision to file suit in the United States was motived by a legitimate reason such as convenience or the ability to obtain jurisdiction over the defendants rather than tactical advantage. *See Iragorri*, 274 F.3d at 72–73. The presumption of convenience therefore applies with less force to their choice of the United States as a forum.

B

An alternative forum is adequate when the defendant is amenable to process in another jurisdiction that may remedy the alleged harm. *Piper Aircraft*, 454 U.S. at 254–55. In extraordinary cases, an unfavorable difference in law is relevant to the inquiry. If the available remedy in the alternative forum is "clearly inadequate or unsatisfactory"—for example, the jurisdiction "does not permit litigation of the subject matter of the dispute"—dismissal would thwart the interest of justice. *Id.* at 254 & n.22 (citing *Phx. Can. Oil Co. v. Texaco, Inc.*, 78 F.R.D. 445 (Del. 1978)). Law that is simply less favorable to the plaintiff in the alternative forum is not so extraordinary as to render that forum inadequate. *Wong v. PartyGaming Ltd.*, 589 F.3d 821, 831 (6th Cir. 2009).

Ethicon has consented to service in Germany and the Hefferans do not contend that a German court would lack subject-matter jurisdiction over their claims. Nonetheless, the Hefferans maintain that Germany is an inadequate forum for two reasons.

1

First, Germany's legal system operates differently than that of the United States, in ways that make it an inadequate alternative forum according to the Hefferans. For example, the German system employs court-appointed experts, has lower average damages awards for pain and suffering than the United States, and lacks jury trials, party-directed pretrial discovery, and punitive damages. That a foreign legal system has its own procedures and idiosyncrasies is to be expected. The relevant question for purposes of forum non conveniens is whether those differences render the possible remedy so clearly inadequate that forcing a plaintiff to bring suit there would be unjust.

Like many civil-law jurisdictions, Germany relies on judges to investigate the facts, appoint experts, and serve as factfinder. Geoffrey C. Hazard, Jr., Discovery and the Role of the Judge in Civil Law Jurisdictions, 73 Notre Dame L. Rev. 1017, 1022 (1998). To be sure, the investigatory and decision-making power of its judiciary means that tort claims are litigated differently in Germany than the United States. But the Hefferans do not show how that would limit their access to critical evidence, let alone deprive them of an adequate remedy if forced to

bring suit there. Nor is a forum inadequate simply because of the likelihood of lesser damages. *See* Gerald Spindler & Oliver Rieckers, Tort Law in Germany 134 (2011) ("All in all, the sums awarded for pain and suffering [in Germany] are rather modest, especially when compared with US verdicts.") If that were a sufficient ground to defeat the motion, then a district court might never be within its power to dismiss a tort suit for forum non conveniens in favor of a German court. *See Smith Kline & French Lab. Ltd. v. Bloch*, [1983] 1 W.L.R. 730, 733 (C.A.) (Eng.) ("As a moth is drawn to the light, so is a litigant drawn to the United States.") The differences in Germany's legal system do not reveal an alternative forum that provides a remedy "so clearly inadequate or unsatisfactory" that it is "no remedy at all." *Piper Aircraft*, 454 U.S. at 254.

2

Second, German law does not allow Sabine Hefferan to recover for loss of consortium. The district court concluded, based on a dictum from the unpublished opinion of another circuit, *see Adams v. Merck & Co.*, 353 F. App'x 960, 963 (5th Cir. 2009), that inability to pursue a claim for loss of consortium does not render a forum inadequate. We do not reach that question because we agree with the district court's alternative finding: Even if litigated in a United States district court, Sabine Hefferan's claim would be governed by German substantive law.

Like nearly all states, New Jersey recognizes a spouse's right to sue for loss of consortium. *See Kibble v. Weeks Dredging & Constr. Co.*, 735 A.2d 1142, 1149 (N.J. 1999); Black's Law Dictionary 1088–89. According to the Hefferans' expert (with whom Ethicon apparently agrees), German law does not permit a comparable claim when the victim-spouse survives. An actual conflict between New Jersey and German loss-of-consortium law raises the question whether dismissal in favor of proceedings in Germany would result in an unfavorable difference in law. Germany might be an inadequate alternative forum if dismissal deprives Sabine Hefferan of a remedy that would be available if the suit remained in the United States. *See Piper Aircraft*, 454 U.S. at 254–55. But that would be the case only if her right to recover would be determined by the law of a jurisdiction that does compensate for loss of consortium, rather than Germany's.

If the case remained in the United States, the district court would need to determine which jurisdiction's choice-of-law rules would dictate the law to be applied in deciding Sabine Hefferan's right to recover. In cases of voluntary transfer, the transferee forum applies the laws of the transferor court. *Ferens v. John Deere Co.*, 494 U.S. 516, 523 (1990). Thus, transfer of a diversity action between federal district courts pursuant to 28 U.S.C. § 1404(a) does not change the applicable choice-of-law rules in American courts—in this case, those of New Jersey.

In personal-injury cases where a conflict of laws arises, New Jersey courts apply the "most significant relationship" test from the Restatement (Second) of Conflicts. *P.V. ex rel. T.V. v. Camp Jaycee*, 962 A.2d 453, 460 (N.J. 2008). In cases of actual conflict, the parties' rights and liabilities are decided according to the law of the jurisdiction where the injury occurred unless another jurisdiction has a more significant relationship to the occurrence and the parties. *Ibid.*; Restatement (Second) of Conflicts § 146. To determine the jurisdiction with the most significant relationship, the Restatement takes into account:

(a) the place where the injury occurred,
(b) the place where the conduct causing the injury occurred,
(c) the domicil [sic], residence, nationality, place of incorporation and place of business of the parties, and
(d) the place where the relationship, if any, between the parties is centered.

Restatement (Second) of Conflicts § 145(2). Analysis of those contacts is "not merely quantitative." *P.V.*, 962 A.2d at 463. "The purpose is to determine their bearing for the guiding touchstones of Section 6 of the *Restatement*, which, '[r]educed to their essence,' are: '(1) the interests of interstate comity; (2) the interests of the parties; (3) the interests underlying the field of tort law; (4) the interests of judicial administration; and (5) the competing interests of the states.'" *Cornett v. Johnson & Johnson*, 998 A.2d 543, 552 (N.J. Sup. Ct. App. Div. 2010) (quoting *P.V.*, 962 A.2d at 463).

"Ordinarily, choice-of-law determinations are made on an issue-by-issue basis, with each issue receiving separate analysis." *Erny v. Estate of Merola*, 792 A.2d 1208, 1213 (N.J. 2002).

For purposes of forum non conveniens, the district properly anticipated that a New Jersey court would probably apply German law to this claim.[1]

For Sabine Hefferan's loss-of-consortium claim, most of the contacts are clear cut. The parties do not dispute that the alleged injury occurred in Germany where the Hefferans live. The residence-of-the-parties factor does not clearly point toward or away from Germany. Both appellees are incorporated and headquartered in the United States; Sabine Hefferan is a German citizen living in Germany. To the extent the parties have a relationship, Germany appears to be its locus. Although the stapler's alleged defect originated in the United States or Mexico, it was purchased and used in Germany. *See Cornett*, 998 A.2d at 552 (relationship between patient and medical-device company was in state where healthcare provider received and used device). As to the "place where the conduct causing the injury occurred," the facts point away from Germany, but not necessarily toward the United States alone. New Jersey courts appear to consider only the place of the *defendant's* alleged misconduct. *See, e.g.*, *P.V.*, 962 A.2d at 461. In a case involving a Florida medical-device manufacturer (another Johnson & Johnson subsidiary), a Kentucky resident died after being implanted with an allegedly mislabeled stent. *Cornett*, 998 A.2d at 550. The court's "place of the conduct" analysis focused only on the location of the manufacturer's "specific and identifiable activities." *Id.* at 552. Ethicon's alleged misconduct in manufacturing a defective product occurred in Ohio and Mexico.

Germany has the most significant relationship to the parties and occurrence. The injury occurred there and it is the place of the parties' relationship. Sabine Hefferan is a German citizen living at home. Although the defendants are United States corporations and the conduct causing the injury occurred at least partially in the United States, those contacts do not outweigh Germany's. Moreover, the interests of comity and judicial administration favor application of German law to a question of liability flowing from an injury that occurred within its borders caused by a product sold and used there. *See id.* at 553; Restatement (Second) of Conflicts § 6.

The public-policy step of the analysis also favors litigating in Germany. The "most significant relationship" test is not simply an exercise in adding contacts. New Jersey courts

---

[1]Our analysis for forum non conveniens purposes does not purport to control the German court's resolution of conflict-of-laws issues.

"identify the governmental policies underlying the law of each state and how those policies are affected by each state's contacts with the litigation and the parties. If a state's contacts are not related to the policies underlying its law, then that state does not possess an interest in having its law apply." *Fu v. Fu*, 733 A.2d 1133, 1153 (N.J. 1999) (citation omitted); *see also Rowe v. Hoffman-La Roche, Inc.*, 917 A.2d 767, 771–72 (N.J. 2007).

Under New Jersey law, neither Ohio nor New Jersey has an interest in protecting Sabine Hefferan's right to recover for loss of consortium. A state "undoubtedly has an interest in regulating the safety of any activities in [a local] facility that might have contributed to the injury." *Cornett*, 998 A.2d at 380. But Ethicon did not manufacture the stapler in either state. Whatever policy underlies Germany limiting spousal recovery for loss of consortium, its interest in the claim cannot be less than those of Ohio or New Jersey.

Litigating in Germany would not result in an unfavorable change in law for Sabine Hefferan on her loss-of-consortium claim because the federal court in Ohio would likely apply German law. This case therefore does not present those "rare circumstances" where a forum's "clearly unsatisfactory" remedy renders it an inadequate alternative. *Piper Aircraft*, 454 U.S. at 254 n.22.

C

The onus of showing that a plaintiff's choice of forum is unnecessarily burdensome falls on the defendant. That inquiry is guided by public- and private-interest factors set forth by the Supreme Court in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947). The "obligation to consider all factors applies to each analytically distinct set of claims." *Duha*, 448 F.3d at 879. The Hefferans argue that the district court abused its discretion because, on the whole, it erroneously weighed the factors. Although a different court may have given the factors different weight, the district court's balancing was not unreasonable.

1

Private-interest factors include "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining

attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gulf Oil*, 330 U.S. at 508. To examine them, "the district court must scrutinize the substance of the dispute between the parties to evaluate what proof is required, and determine whether the pieces of evidence cited by the parties are critical, or even relevant, to the plaintiff's cause of action and to any potential defenses to the action." *Van Cauwenberghe v. Biard*, 486 U.S. 517, 528 (1988).

*Ease of Access to Sources of Proof.* The charge to examine the relative ease of access to sources of proof requires courts to dig into the substance of the dispute to assess the relevant evidence. *Ibid.*; *see also Iragorri*, 274 F.3d at 74. The district court here found that accessing witnesses would be easier in Germany. Most of the Hefferans' proposed witnesses, including "all of the medical witnesses"—five specific physicians and the "doctors and medical providers" of two medical facilities—are in Germany. Ethicon disclosed only two witnesses with discoverable information relating to the stapler's design, application, and manufacture, both apparently located in the United States.

According to the Hefferans, the district court's analysis did not sufficiently focus on the issues likely to be tried. All of the Hefferans' claims center on Ethicon's liability for an allegedly defective stapler. That will require a close examination of the surgery and the harm attributable to the stapler as opposed to other potential causes. Accordingly, the district court properly took into account the location of potential witnesses involved in Brandon Hefferan's surgery and subsequent medical care. The court also properly determined that the surgeons who actually used the device were critical to the Hefferans' claims.

Other kinds of proof such as documents, photographs, and electronically stored information are also part of ease-of-access analysis. *See Duha*, 448 F.3d at 876. Both parties disclosed non-witness sources of proof. The district court found, and Ethicon emphasizes on appeal, that Germany does not compel the production of pretrial documents for foreign courts such as those of the United States. Germany has made a reservation to pretrial document discovery under the Hague Evidence Convention, Mar. 18, 1970, 23 U.S.T. 2555, and it generally rejects pretrial discovery requests from foreign courts, *see* Anke Meier, U.S.

Discovery: The German Perspective, 37 Deutsch-Amerikanische Juristen-Vereinigung Newsl. 9, 10 (2012).

However, exhaustive ease-of-access analysis demands more precise scrutiny than answering the question whether a foreign jurisdiction has in place procedures to compel document discovery. The location and language of relevant documents, and the need to resort to the comparatively more restrictive process, are also germane. *See Duha*, 338 F.3d at 876. The district court's reference to German policy on pretrial documents does not take into account the impact on Ethicon's ability to obtain relevant evidence were the trial in the United States.

We give little weight to the ease-of-access factor because the district court did not fully consider which witness and non-witness sources of proof are "critical, or even relevant" to Ethicon's case. *Van Cauwenberghe*, 486 U.S. at 528.

*Availability of Compulsory Process*. This factor is "properly considered when witnesses are unwilling" to appear. *Duha*, 448 F.3d at 877. However, it receives less weight "when it has not been alleged or shown that any witness would be unwilling to testify." *Ibid.* Ethicon speculates that if trial proceeded in federal district court, they would be "severely restricted" in obtaining the testimony of German witnesses. But they do not allege, much less show, that any witness is unwilling to testify, and that compulsory process is therefore needed.

Similarly, a foreign forum's more burdensome procedures for compelling the production of evidence receives less weight when the defendant has neither alleged nor shown the need to avail itself of that process. To be sure, "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). And the district court may have been correct that in foreign proceedings, it is easier to compel the production of evidence located in the United States through 28 U.S.C. § 1782 than evidence in Germany through the Hague Evidence Convention. *Cf.* Catherine Piché, Discovery in International Litigation, 38 Int'l Law. 329, 329 (2004) (Section 1782 "does not require that requests for evidence be channeled through governmental bureaucracies as would be required under the Hague Convention"). But the Hague Convention is not a "rule of exclusivity" that deprives district courts of other methods of obtaining evidence from abroad. *Société Nationale*

*Industrielle Aérospatiale v. U.S. District Court*, 482 U.S. 522, 539 (1987). Germany's more taxing process for compelling discovery for foreign proceedings receives less weight than if Ethicon had shown that litigating in the United States would in fact produce an evidentiary imbalance.

*Other Practical Problems.* The list of private-interest factors includes a catch-all for "practical problems that make trial of a case easy, expeditious and inexpensive." *Gulf Oil*, 330 U.S. at 508. This includes a plaintiff's financial ability to practicably bring suit in the alternative forum. *See Murray v. British Broad. Corp.*, 81 F.3d 287, 294 (2d Cir. 1996); *Mercier v. Sheraton Int'l, Inc.*, 981 F.2d 1345, 1353 (1st Cir. 1992); *Reid-Walen v. Hansen*, 933 F.2d 1390, 1398 & n.11 (8th Cir. 1991). However, this factor receives less weight when a plaintiff does not demonstrate its inability to shoulder the cost of litigating in the alternative forum. *See Duha*, 448 F.3d at 877.

The Hefferans point to three costs that allegedly weigh against dismissal. First, their expert asserts that in German court, upfront filing fees can be significant for personal-injury claims. Although the Hefferans submitted evidence suggesting that German filing fees can be significant, they did not establish that these fees would be greater than the out-of-pocket costs they might incur if the case proceeded in the United States. Next, they point to a bond required of claimants who file suit in Germany but who do not have a "habitual place of residence" in the European Union. It is not clear that such a bond would even apply to the Hefferans, both of whom are domiciled in Germany. Besides, Ethicon has agreed to waive the requirement.

Last, the unavailability of contingency-fee arrangements in Germany will, by the Hefferans' estimation, "likely amount to at least tens of thousands of dollars" in additional costs for them. Contingency payment of legal fees certainly opens a litigation system to otherwise priced-out plaintiffs. However, the Hefferans do not support their assertion with evidence of the fees that they would avoid if the case proceeded in the United States.

The district court's conclusion was not in error. Relative ease of access to sources of proof and the availability of compulsory process for proceedings abroad support dismissal.

2

Public-interest factors include "administrative difficulties flowing from court congestion; the 'local interest in having localized controversies decided at home'; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty." *Piper Aircraft*, 454 U.S. at 241 n. 6 (quoting *Gulf Oil*, 330 U.S. at 509). To evaluate them, district courts "must consider the locus of the alleged culpable conduct, often a disputed issue, and the connection of that conduct to the plaintiff's chosen forum." *Van Cauwenberghe*, 486 U.S. at 528. These factors will typically "thrust the court into the merits of the underlying dispute." *Ibid.*

*Local Interest in Deciding a Local Controversy*. The primary local-interest considerations are the parties' connections to the local forum and the location of the injury. For example, when a case pits an American manufacturer against foreign nationals injured at home by a product sold there, the "incremental deterrence" of trial in the United States usually cannot overcome the foreign forum's interest in the dispute. *Piper Aircraft*, 454 U.S. at 260; *see also Dowling v. Richardson-Merrell, Inc.*, 727 F.2d 608, 615 (6th Cir. 1984). Adding an American plaintiff to the mix does not necessarily tip the scales. After her husband died in a plane crash near Madrid, the *Kryvicky* plaintiff, a Michigan resident who at the time of the accident had been living in Spain, sued a Swedish airline and an American plane manufacturer. We reasoned that "the country where the injury occurred ha[d] a greater interest in the ensuing products liability litigation than the country where the product was manufactured." 807 F.2d at 517.

Here, the stapler's design and manufacture by an American company does not outweigh Germany's interest in the controversy, to say nothing of the Hefferans' German domicile. The country where a product is sold, used, and regulated has a strong interest, often an insurmountably strong interest, in litigation involving that product.

*Conflict of Laws*. As with the loss-of-consortium claim, Part II.B.2, *supra*, the Hefferans' right to recover on their other claims would likely be decided by German law. The United States does have an additional contact to Brandon Hefferan. He is an American citizen. Yet like his

wife, Brandon Hefferan lives and works in Germany.  In light of his longtime German domicile, Brandon Hefferan's American citizenship does not increase United States contacts enough to give it a greater interest in his claims.  The district court correctly concluded that the interest of proceeding in a forum whose law will decide the parties' rights and liabilities supports dismissal.

*Jury Duty*.  We do not rely on the district court's conclusion that the unfairness of foisting jury duty on United States citizens with "no relation to the litigation" weighs in favor of dismissal.  That analysis turns what should be an independent factor into a redundancy.

The court's conclusion that the public-interest factors support granting forum non conveniens was in any event correct.  Germany has a strong interest in deciding a controversy involving a product purchased and used within its borders, especially because the suit will involve the application of its law to determine the parties' rights and liabilities.

III

Where a district court has considered all relevant public- and private-interest factors, and has reasonably balanced those factors, its decision deserves substantial deference.  The court here correctly concluded that Ethicon met its burden of showing that if the case remained in the Southern District of Ohio, the vexation it would endure and trouble to the court would be out of proportion to the Hefferans' minimal convenience.

The district court did not specify whether its dismissal was with or without prejudice. However, when the appropriate disposition is well established, we read ambiguity according to that convention.  *See Bell v. Konteh*, 450 F.3d 651, 653 n.4 (6th Cir. 2006).  It is well established that the appropriate disposition of a granted forum non conveniens motion is dismissal without prejudice to filing in the alternative forum.  *See Manez v. Bridgestone Firestone N. Am. Tire, LLC*, 533 F.3d 578, 583 (7th Cir. 2008).  We therefore read the district court's order as such and AFFIRM without prejudice to the case being refiled in Germany.