NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0431n.06

Case No. 22-1253

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Oct 24, 2022
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| XUAN LU, | ) | |
|  | ) | |
| Plaintiff-Appellant, | ) | |
|  | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
|  | ) | COURT FOR THE EASTERN |
|  | ) | DISTRICT OF MICHIGAN |
| SAP AMERICA, INC., et al., | ) | |
|  | ) | |
| Defendant-Appellee. | ) | |
|  | ) | OPINION |

Before: McKEAGUE, THAPAR, and READLER, Circuit Judges.

McKEAGUE, Circuit Judge. Xuan Lu, a Chinese citizen temporarily residing and working in Michigan, sued her employer, SAP America, for discrimination, retaliation, and intentional infliction of emotional distress under both federal and Michigan law. The district court granted SAP America's motions to set aside default and to dismiss on the ground of forum non conveniens, and Lu appealed. Because we find that there was no clear abuse of discretion, we affirm.

**I**

**A. Background**

Plaintiff-Appellant Xuan Lu is a Chinese citizen residing in the United States for six months out of the year pursuant to a valid green card. On March 2, 2015, Lu was hired by SAP (China) Co., Ltd. (formerly SAP Beijing Software System Co., Ltd., hereinafter "SAP China") as a Global Legal Compliance Officer. Her Employment Contract listed Beijing, China as her work

location and contained a labor dispute provision mandating arbitration, mediation, and/or litigation of all labor disputes in the Chinese courts.

For the first three years of her employment, Lu lived and worked in Beijing, China under the direct supervision of Vivianne Gordon-Puller and Hanno Hinzmann. During that time, she was considered an "outstanding employee" and consistently received large bonuses.

In May 2018, Lu was assigned to a new supervisor, Azmeen Moiz, who lived and worked in Singapore. While under Moiz's supervision, Lu requested to spend time in the United States in order to be with her son. She obtained approval to begin working remotely from Michigan for six months out of the year. Defendant-Appellant SAP America, Inc. (hereinafter "SAP America") sent a letter to Lu, acknowledging Lu's plans to work from the United States. The letter stated in part: "SAP America, Inc. recognizes that you will work in the United States remotely from home and not in a[] SAP office location for [six months] and at SAP (China) Co., Ltd., Beijing Branch for [six months] in each calendar year." SAP America further acknowledged that Lu's work would "primarily be for the benefit of SAP China in [her] current role of Lead Senior Legal Counsel" and that she would "continue to report to current manager, Moiz Azmeen, during [her] time in the U.S."

When Lu began working in the United States, the time difference routinely required her to attend mandatory Skype meetings in the middle of the night. Lu had been diagnosed with lupus and these late-night meetings aggravated her symptoms of insomnia and fatigue. Because she found attending Moiz's required meetings "extremely difficult and debilitating," Lu requested an accommodation.

Moiz rejected her request, but according to Lu, this was only the beginning. Moiz allegedly proceeded to retaliate and discriminate against Lu on the basis of her disability by failing to provide

her with vacation time, ignoring her leave requests, not assigning her any business travel, and paying her smaller annual bonuses than her Indian coworkers. According to Lu, Moiz also often yelled at her, sought negative feedback about her from her colleagues, and falsely accused her of various errors.

Lu complained of Moiz's conduct to Hinzmann, Moiz's supervisor who was based in Germany, but Hinzmann took no action. Moiz then placed Lu on a ninety-day "Performance Improvement Plan" (PIP), which Lu argues was "patently false." When Lu again complained of Moiz's discriminatory conduct, this time to Hinzmann's supervisor, Gordon-Puller, Gordon-Puller simply told Lu to comply with the PIP. Ultimately, Lu contacted Human Resources, and in November 2019, Lu's presence was requested at an in-person meeting in China, purportedly to review her PIP. Lu repeatedly requested sick leave to excuse her attendance, but was told she would be fired if she failed to attend the meeting.

On November 18, 2019, Lu attended the PIP meeting, despite her ongoing illness. However, no PIP review was conducted. Instead, Lu was given a termination letter that vaguely referenced alleged violations of company policy. Believing her termination was discriminatory and in violation of Chinese employment law, Lu complied with her Employment Contract's labor-dispute provision and filed a complaint with the Labor Arbitration Committee in Chaoyang District, Beijing against SAP China. Lu sought reinstatement of her employment, compensation for lost salary, her Y2019 annual target bonus, the difference between her Y2019 and Y2018 bonuses, and payment of "Move SAP," a form of equity granted by SAP S.E. On August 20, 2020, the Labor Arbitration Committee awarded Lu reinstatement, her lost salary, and her Y2019 bonus, but denied her remaining claims. Both Lu and SAP China challenged the award by filing suit in

the People's Court of Chaoyang District, Beijing. At the time of the district court's decision in the case underlying this appeal, that matter against SAP China remained pending in the Chinese courts.

## B. Procedural History

On April 9, 2021, Lu filed suit in the United States District Court for the Eastern District of Michigan against SAP America, SAP China and SAP S.E.—who she collectively refers to as her "joint employers." She brought claims for disability, racial and national origin discrimination; retaliation; and intentional infliction of emotional distress under federal and Michigan law. On July 6, 2021, Lu sent copies of the summons and complaint to SAP America's resident agent, the Corporation Company, via overnight mail, signature required, and certified mail, return receipt requested. When SAP America failed to answer, on July 8, 2021, the district court ordered Lu to show cause why the case should not be dismissed for failure to prosecute. Lu responded by providing tracking numbers indicating her previous mailing of the summons and complaint to SAP America's resident agent. In that same response, Lu also requested that the court extend her summons for one year as to SAP China and SAP S.E. to allow for service under the Hague Convention. SAP America is the only defendant involved in this appeal.

On August 17, 2021, Lu filed a Request for Clerk's Entry of Default against SAP America for failure to plead or otherwise defend. The court promptly entered the Clerk's Entry of Default as to the defendant corporation. Almost four months later, on December 21, 2021, Lu served SAP America's resident agent with the Clerk's Entry of Default.

Thereafter, SAP America filed a Motion to Set Aside Default. The corporation argued that service was improper and that it could demonstrate good cause under Federal Rule of Civil Procedure 55(c). SAP America also filed a Motion to Dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) or, alternatively, under the doctrine of forum non

conveniens. On March 3, 2022, the district court granted SAP America's Motion to Set Aside Default and its Motion to Dismiss on the basis of forum non conveniens. This appeal followed.

## II

We turn first to SAP America's Motion to Set Aside Default. On appeal, Lu argues that the district court abused its discretion in setting aside the default against SAP America because service of process was proper under Michigan law. It was not. Because Lu only mailed copies of the summons and complaint to SAP America's resident agent and did not accompany those mailings with any form of personal service, Lu failed to comply with the methods for service of process allowed by the Federal Rules and Michigan law. Accordingly, the district court did not abuse its discretion when it granted SAP America's Motion to Set Aside Default.

### A. Standard of Review

We review for abuse of discretion a district court's decision to set aside a default. *See United Coin Meter Co., Inc. v. Seaboard Coastline R.R.*, 705 F.2d 839, 843 (6th Cir. 1983). Under Federal Rule of Civil Procedure 55(c), the court may set aside a default for "good cause." In determining whether good cause exists, the court must consider: "(1) [w]hether culpable conduct of the defendant led to the default, (2) [w]hether the defendant has a meritorious defense, and (3) [w]hether the plaintiff will be prejudiced." *Waifersong, Ltd. v. Classic Music Vending*, 976 F.2d 290, 292 (6th Cir. 1992) (citing *United Coin Meter*, 705 F.2d at 845).

But before we can reach the issue of good cause, we must establish whether service of process was proper. Proper service of process is required for a court to have personal jurisdiction over a defendant. *Canaday v. Anthem Cos.*, 9 F.4th 392, 395 (6th Cir. 2021). Accordingly, "if service of process was not proper, the court must set aside an entry of default." *O.J. Distrib., Inc. v. Hornell Brewing Co.*, 340 F.3d 345, 352 (6th Cir. 2003), *abrogated on other grounds by Morgan*

*v. Sundance, Inc.*, 142 S. Ct. 1708, 1712 (2022). "We exercise plenary review over legal issues involving the adequacy of service but review the relevant findings of fact for clear error." *Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 623 (6th Cir. 2004) (citing *LSJ Inv. Co., Inc. v. O.L.D., Inc.*, 167 F.3d 320, 322 (6th Cir. 1999)).

### B. Service of Process

SAP America is a Delaware corporation with its principal place of business in Pennsylvania. Under Federal Rule of Civil Procedure 4(h), corporations must be served in a judicial district of the United States:

(A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or

(B) *by delivering a copy* of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—*by also mailing a copy* of each to the defendant[.]

Fed. R. Civ. P. 4(h)(1) (emphasis added). By its plain terms, Rule 4(h)(1)(B) authorizes service of process by mailing *and* personally serving a copy of the summons and complaint. Here, as the district court correctly noted, Lu failed to personally deliver a copy of the summons and complaint to an authorized individual, and instead only mailed the documents to SAP America's resident agent. *See Lu v. SAP America*, No. 21-10796, 2022 WL 627146, at *2 (E.D. Mich. Mar. 3, 2022) ("[T]here is no evidence that Lu personally delivered a copy of the Summons and Complaint[.]").

The question, therefore, is whether Lu properly served SAP America pursuant to Rule 4(h)(1)(A). That provision cross-references Rule 4(e)(1), which allows for service of process by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made[.]" Fed. R. Civ. P. 4(e)(1).

We thus look to Michigan law to determine whether Lu's service of process on SAP America was legally sufficient.

Michigan Court Rule 2.105(D) requires that private corporations be served by one of the following methods:

(1) *serving* a summons and a copy of the complaint on an officer or the resident agent;

(2) *serving* a summons and a copy of the complaint on a director, trustee, or person in charge of an office or business establishment of the corporation *and sending* a summons and a copy of the complaint by registered mail, addressed to the principal office of the corporation;

(3) *serving* a summons and a copy of the complaint on the last presiding officer, president, cashier, secretary, or treasurer of a corporation that has ceased to do business by failing to keep up its organization by the appointment of officers or otherwise, or whose term of existence has expired;

(4) *sending* a summons and a copy of the complaint by registered mail to the corporation or an appropriate corporation officer and to the Michigan Bureau of Commercial Services, Corporation Division if (a) the corporation has failed to appoint and maintain a resident agent or to file a certificate of that appointment as required by law; (b) the corporation has failed to keep up its organization by the appointment of officers or otherwise; or (c) the corporation's term of existence has expired.

Mich. Ct. R. 2.105(D) (emphasis added).

Read in its entirety, Rule 2.105(D) makes clear that "serving" is not synonymous with "sending" by mail. Otherwise, the Rule's use of both terms would be duplicative and inharmonious. Numerous Michigan district courts have reached the same conclusion, finding that "serving" under Rule 2.105(D) requires personal service. *See, e.g.*, *Burniac v. Wells Fargo Bank, N.A.*, No. 13-CV-12741, 2013 WL 6631582, at *3 (E.D. Mich. Dec. 17, 2013) ("The fact that the rules use differing language for the two steps—*serving* an individual and *sending* to the offices—demonstrates that simply mailing the document . . . does not constitute proper service."); *State Farm Fire & Cas. Co. v. Hamilton Beach/Proctor-Silex, Inc.*, No. 05-74700, 2007 WL 127909, at

\*3–4 (E.D. Mich. Jan. 11, 2007) ("[T]he Michigan Supreme Court did not intend that the term 'serving' be interpreted as synonymous with 'mailing.'"); *Etherly v. Rehabitat Sys. of Mich.*, No. 13-11360, 2013 WL 3946079, at \*1 (E.D. Mich. July 31, 2013) ("Michigan law does not permit service on a corporation by mail alone, certified, registered or otherwise. Mailing must be accompanied by personal service of the agent.").

Here, Lu sent copies of the summons and complaint to SAP America's resident agent twice, once by overnight USPS mail and once by certified mail. She did not, however, accompany these mailings with any form of personal service. Lu therefore failed to comply with subsections (1)–(3), which—for the reasons articulated above—require *personally* "serving a summons and a copy of the complaint" on an authorized individual or entity. Furthermore, Lu's service of process was particularly deficient with respect to subsections (2) and (3), because under those provisions, a resident agent is not listed as an authorized recipient of service of process.

Lastly, Lu's service of process was improper under subsection (4) because, although that provision does allow for "*sending* a summons and a copy of the complaint," such mailing must be directed to the corporation itself, or an appropriate corporation officer and the Michigan Bureau of Commercial Services, *not* a corporation's resident agent. Additionally, subsection (4) is only available as a method of service when a corporation "has failed to appoint and maintain a resident agent or file a certificate of that appointment," "has failed to keep up its organization by appointment of officers or otherwise," or "the corporation's term of existence has expired," and none of these criteria apply to SAP America. Mich. Ct. R. 2.105(D)(4).

In sum, by merely mailing copies of the summons and complaint to SAP America's resident agent, and failing to accompany these mailings with any form of personal service, Lu failed to comply with Rule 2.105(D).

Lu attempts to justify her omission by pointing to Michigan Court Rule 2.104(A). That rule provides that "*Proof of service* may be made by . . . written acknowledgement of the receipt of a summons and a copy of the complaint, dated and signed by the person to whom the service is directed or by a person authorized under these rules to receive the service of process." Mich. Ct. R. 2.104(A) (emphasis added). Without citing any authority, Lu argues that service was proper because SAP America's resident agent signed a written acknowledgement of receipt upon delivery of the summons and complaint.

Her argument, however, improperly conflates *proof* of service with the available *methods* of service—two importantly distinct ideas. Rule 2.104 itself makes this distinction clear: "Failure to file proof of service does not affect the validity of the service." Mich. Ct. R. 2.104(B). By that same logic, successfully filing proof of service would not affect the validity of the underlying service either.

In *Walker v. Aleritas Capital Corporation*, the Michigan Court of Appeals reached the same conclusion when it applied Michigan law in a very similar factual scenario. No. 326354, 2016 WL 3749410, at *4 (Mich. Ct. App. July 12, 2016). There, the plaintiff contended that he had "achieved service on the resident agent, Corporation Trust Company, as evidenced by the signature receipt dated November 4, 2008." *Id.* The court concluded, however, that despite the resident agent's acknowledgement of receipt, service by registered mail on the private corporation's resident agent "was ineffective under both the federal and state court rules." *Id.* Here, signed acknowledgement of receipt by SAP America's resident agent, the Corporation Company, did not render service proper where Lu otherwise failed to comply with either federal or Michigan law.

Lu further attempts to avoid the deficiency in her service of process by arguing that SAP America's attorneys were aware of her lawsuit when they failed to respond the complaint. *See* Appellant's Brief at 10–11 ("[O]n December 31, 2021, SAP America's attorney, Mr. Johnsrud, sent . . . an email admitting that The Corporation Company notified them of the service on July 7, 2021."). But actual knowledge is not a substitute for proper service of process. *LSJ Inv. Co.*, 167 F.3d at 322 (citing *Friedman v. Est. of Presser*, 929 F.3d 1151, 1155–56 (6th Cir. 1991)). The fact that SAP America might have been aware of Lu's suit against it "makes no legal difference to the question [of] whether [it] was properly served." *See King v. Taylor*, 694 F.3d 650, 655–56 (6th Cir. 2012).

In sum, Lu's mailing of the summons and complaint to SAP America's resident agent was insufficient service of process. The district court's decision to set aside the entry of default against SAP America was not only proper, it was required. *See O.J. Distrib.*, 340 F.3d at 353. Because the court was obligated to set aside the entry of default in light of Lu's insufficient service of process, we need not address the "good cause" factors under Federal Rule of Civil Procedure 55(c).

## III

We turn next to SAP America's Motion to Dismiss. Lu argues that the district court erred in dismissing her Complaint on the basis of forum non conveniens because China is an inadequate alternative forum. We conclude that the district court reasonably considered the required forum non conveniens factors and did not abuse its discretion when it granted SAP America's Motion to Dismiss on those grounds.

### A. Standard of Review

The term "forum non conveniens" means an "unfitting forum," and it suggests that a claim can be heard more conveniently elsewhere. *Prevent USA Corp. v. Volkswagen AG*, 17 F.4th 653,

658 (6th Cir. 2021). "Under the common law doctrine of forum non conveniens, a district court may decline to exercise its jurisdiction, even though the court has jurisdiction and venue." *Hefferan v. Ethicon Endo-Surgery Inc.*, 828 F.3d 488, 492 (6th Cir. 2016) (citation omitted). However, a district court is not required to establish its own jurisdiction before dismissing a suit on forum non conveniens grounds. *Sinochem Int'l Co. Ltd. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 432 (2007) ("A district court . . . may dispose of an action by a *forum non conveniens* dismissal, bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant.").

We review a district court's dismissal for forum non conveniens for abuse of discretion, *Associação Brasileira de Medicina de Grupo v. Stryker Corp.*, 891 F.3d 615, 618 (6th Cir. 2018), and give "'substantial deference' to district court decisions that get the process right." *Prevent USA*, 17 F.4th at 658 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981)). Before we will overturn a district court's forum non conveniens decision, we must have "a definite and firm conviction that the trial court committed a clear error of judgment." *Logan v. Dayton Hudson Corp.*, 865 F.2d 789, 790 (6th Cir. 1989).

In reviewing a district court's forum non conveniens dismissal, we consider three factors: the degree of deference owed to the plaintiff's choice of forum, whether an adequate alternative forum is available, and whether private and public interests indicate that the plaintiff's chosen forum would be unnecessarily burdensome. *See Jones v. IPX Int'l Equatorial Guinea, S.A.*, 920 F.3d 1085, 1090 (6th Cir. 2019); *Hefferan*, 828 F.3d at 492.

The analysis is modified, however, when there is a valid and enforceable forum-selection clause. *See Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 63 (2013). "In such cases, the plaintiff's choice of forum 'merits no weight' and courts consider arguments

only under the public-interest factors, treating the private-interest factors as 'weigh[ing] entirely in favor of the preselected forum.'" *Lakeside Surfaces, Inc. v. Cambria Co., LLC*, 16 F.4th 209, 215 (6th Cir. 2021) (quoting *Atl. Marine*, 571 U.S. at 63–64) (alteration in original).

**B. Forum Non Conveniens Analysis**

*1. Applicability of the Forum-Selection Clause*

The district court began its analysis by discussing the forum-selection clause found in Lu's Employment Contract with SAP China. The clause states as follows:

> In the event that a labor dispute arises from the performance of this Contract between both parties, the procedures for labor dispute shall apply. The procedures for labor dispute shall be: the labor dispute may be resolved through negotiation between both parties, or the labor dispute may be mediated by relevant mediation committee, or the parties concerned to the labor dispute may apply for arbitration to a labor and personnel dispute arbitration committee with jurisdiction. If either party disagrees with any arbitration award, it shall file lawsuits with the grassroots people's court [in China].

ECF No. 18-4, PageID 402. Applying this forum-selection clause to its forum non conveniens analysis, the district court gave the provision controlling weight and deemed the private-interest factors to weigh entirely in favor of the preselected forum, China.

On appeal, Lu does not claim that the forum-selection clause is invalid. Instead, she argues that the district court's reference to the forum-selection clause was a "clear error" because SAP America was not a party to her contract with SAP China. Thus, rather than challenge the forum-selection clause's validity or enforceability, Lu appears to challenge only its applicability. In response, SAP America contends that it is incongruous for Lu to simultaneously sue Defendants as "joint employers" and then disregard any contractual relationship that exists between SAP America and SAP China. We tend to agree. However, we need not definitively resolve the dispute regarding the forum-selection clause's applicability here, because, as demonstrated below, even under the more plaintiff-friendly analysis applicable when no forum-selection clause exists, the

district court's decision to dismiss Lu's Complaint on the basis of forum non conveniens was not an abuse of discretion.

## 2. *Deference to Plaintiff's Choice of Forum*

Beginning with the deference owed to Lu's choice of forum, we find that the district court did not abuse its discretion in affording Lu's chosen forum little to no weight. Typically, a domestic plaintiff's choice of forum is entitled to "great deference because it is presumptively convenient for the plaintiff." *Hefferan*, 828 F.3d at 493. A foreign plaintiff's choice, however, "is usually accorded less deference because the assumption of convenience is 'much less reasonable.'" *Id.* (quoting *Piper Aircraft*, 454 U.S. at 256). And where there is a valid forum-selection clause pointing to another forum, a plaintiff's choice warrants no deference at all. *See Lakeside Surfaces*, 16 F.4th at 215.

Here, the district court afforded little to no deference to Lu's choice of forum. This decision was within the district court's discretion because the forum-selection clause expressly pointed to China, and Lu's choice of an American forum thus warranted no deference. Even if the forum-selection clause did *not* apply, as Lu contends, the district court's decision to dismiss the complaint would still be within its discretion, considering the balance of private and public factors, because Lu, as a Chinese citizen, was entitled to only little deference in her choice of an American forum.

## 3. *Adequate Alternative Forum*

Next, we turn to China's adequacy as an alternative forum. Before a suit can be dismissed on forum non conveniens grounds, an adequate alternative forum must be identified. *Wong v. PartyGaming Ltd.*, 589 F.3d 821, 830 (6th Cir. 2009). An alternative forum is adequate when the defendant is amenable to process and the alleged harm can be remedied. *Hefferan*, 828 F.3d at 494. If the alternative forum offers a remedy that is "clearly inadequate or unsatisfactory," such as

"not permit[ting] litigation of the subject matter of the dispute," it is inadequate and dismissal may be improper. *Piper Aircraft*, 454 U.S. at 254 & n.22. Law that is merely less favorable to the plaintiff, however, does not render the alternative forum inadequate. *Wong*, 589 F.3d at 831.

In this case, the district court determined that the Chinese courts are an adequate alternative forum for Lu's claims. This was not an abuse of discretion. Lu is a Chinese citizen employed pursuant to an employment contract with a Chinese company governed by Chinese law. Even more importantly, Lu has already engaged in legal proceedings related to her termination in China and she has recovered on those claims. Given this context, Lu faces a particularly high barrier to convincingly demonstrating that the district court was not within its discretion when it deemed China an adequate alternative forum.

Lu attempts to clear this hurdle by asserting that China does not recognize failure-to-accommodate claims. Specifically, Lu contends that China's "Employment Promotion Law" is mere "lip service," offering only limited protection to those with disabilities.

> The Employment Promotion Law of the People's Republic of China provides:
>
> Article 29. The state shall safeguard the labor rights of disabled persons. The people's governments at all levels shall organize and coordinate the employment of disabled persons and create favorable employment conditions for such persons. No employment unit, when recruiting employees, shall discriminate against disabled persons.
> . . .
> Article 62. In the event of any employment discrimination in violation of the provisions of this Law, the relevant worker(s) shall be entitled to initiate legal proceedings in the peoples' court.

ECF No. 22-2, PageID 645, 648. By its plain terms, the law requires the Chinese government to "safeguard the labor rights of disabled persons," including Lu, and it entitles workers to initiate proceedings in Chinese courts in the event they are discriminated against. The district court was thus within its discretion to conclude that the Employment Promotion Law "protects Chinese

workers against discrimination on the basis of ethnicity, race, or disability, and it provides workers with a right of action in the people's court in China." *Lu*, 2022 WL 627146, at *7. Although the Employment Promotion Law does not expressly provide for a failure-to-accommodate cause of action, it does not go so far as to preclude these types of claims. And, as the district court properly notes, Lu's preference for Title VII and the ADA does not mean that China is an inadequate forum. The challenged distinctions between American and Chinese law do not render the remedy offered by Chinese courts "so clearly inadequate or unsatisfactory that it is no remedy at all." *See Piper Aircraft*, 454 U.S. at 254.

Additionally, SAP America is amenable to service in China.[1] SAP China and SAP America are wholly-owned subsidiaries of SAP S.E. There is no question that SAP China is amenable to process in China. And if SAP America is a party to Lu's employment contract with SAP China, it would certainly be amenable to process by virtue of the contract's forum-selection clause. *See Wong*, 589 F.3d at 831. If, however, SAP America is not considered a party to the contract, the amenability requirement would still be satisfied on other grounds. In prior cases, "we have affirmed dismissal for forum non conveniens even when the other forum lacked jurisdiction over one defendant where other affiliated corporate entities from whom the plaintiffs could recover were amenable to service." *Prevent USA*, 17 F.4th at 664. Applying that same logic here, we conclude that SAP China is an affiliated corporate entity from whom Lu can recover. Notably, she already has. Should SAP America not be amenable to process in China for any reason, SAP China's amenability would satisfy the requirement.

---

[1] Although Lu does not refute SAP America's amenability to process on appeal, we address this factor should there be any doubt.

### 4. *Public and Private Interest Factors*

Once the district court determines that an adequate alternative forum exists, "it must weigh the relevant public and private factors in favor of a different forum." *Wong*, 589 F.3d at 831–832. The public factors include:

> court congestion; the 'local interest in having localized controversies decided at home'; the interest in having a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Piper Aircraft*, 454 U.S. at 241 n.6 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947)). With respect to these factors, the defendant bears the burden of demonstrating that the plaintiff's chosen forum is unnecessarily burdensome. *See Hefferan*, 828 F.3d at 492.

The district court reasonably applied these factors in its forum non conveniens analysis. On the record below, SAP America argued that Lu was a Chinese citizen employed in China by a Chinese employer under an employment contract governed by Chinese law. The corporation also emphasized that Lu had already engaged in legal proceedings related to her termination in the Chinese courts and that she possessed only a "tenuous connection" with Michigan. According to SAP America, China has a greater interest in resolving Lu's case than the United States or Michigan. Lu, on the other hand, did not address any of the public interest factors in her Response to SAP America's Motion to Dismiss.

After evaluating the arguments—and lack thereof—put forth by the parties, the district court was persuaded by SAP America and concluded that the public interest factors weigh in favor of the Chinese courts. That determination is supported by the record that was before the district court and does not amount to an abuse of discretion.

In addition to weighing the public factors, a district court must consider private interest factors, including:

> [the] relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Gulf Oil*, 330 U.S. at 508. When, however, the "parties agree to a forum-selection clause, . . . [a] court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Atl. Marine*, 571 U.S. at 64.

Applying the disputed forum-selection clause to its forum non conveniens analysis, the district court concluded that the private-interest factors automatically weighed in favor of the Chinese courts. Because the district court enforced the forum-selection clause, it did not therefore address each private-interest factor directly.

If the district court had not applied the forum-selection clause, however, and instead evaluated the private interest factors, it could have reasonably reached the same conclusion. As SAP America argues on appeal, Lu is a Chinese citizen, she has already pursued legal recourse in the Chinese courts, and there is no evidence to suggest that litigation in Michigan would be less costly or more efficient. None of the individuals Lu complains about are located in Michigan, nor are they SAP America employees. And the discrimination Lu alleges, such as the enforcement of the PIP and her ultimate termination, took place in China. Beyond Lu's residence in Michigan for six months out of the year, per her request, very little ties this litigation to SAP America or the State of Michigan. Thus, even without consideration of the disputed forum-selection clause, the private interest factors support the district court's dismissal of Lu's Complaint.

Lu argues that the district court failed to adequately balance these public and private factors. Specifically, she counters that the "local interest" in the matter is in fact in Michigan. But like the district court, we are unconvinced. Furthermore, "it is not our role to rebalance the interests" on appeal. *Jones*, 920 F.3d at 1093. That Lu disagrees with the district court's consideration of the factors, or that another district court might have weighed the factors differently, does not constitute an abuse of discretion. *See Hefferan*, 828 F.3d at 498. Here, the district court acted within its discretion. Lu's preference for a different outcome does not warrant reversal.

**IV**

For the foregoing reasons, we AFFIRM.