RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 19a0067p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

PAUL JONES,

> *Plaintiff-Appellant*,

*v.*

No. 18-1405

IPX INTERNATIONAL EQUATORIAL GUINEA, S.A.,

> *Defendant-Appellee*.

───────────────

Appeal from the United States District Court
for the Eastern District of Michigan at Ann Arbor.
No. 5:17-cv-12483—John Corbett O'Meara, District Judge.

Decided and Filed: April 9, 2019

Before: BATCHELDER, McKEAGUE, and NALBANDIAN, Circuit Judges.

───────────────

## COUNSEL

**ON BRIEF:** Dean Elliott, DEAN ELLIOTT, PLC, Royal Oak, Michigan, for Appellant. Gaëtan Gerville-Réache, WARNER NORCROSS + JUDD LLP, Grand Rapids, Michigan, for Appellee.

McKEAGUE, J., delivered the opinion of the court in which BATCHELDER, J., joined, and NALBANDIAN, J., joined in part and in the judgment. NALBANDIAN, J. (pp. 11–12), delivered a separate concurring opinion.

───────────────

## OPINION

───────────────

McKEAGUE, Circuit Judge. Paul Jones is a United States citizen who chose to make his money abroad. In good times, he was happy to invest, work, and live in Equatorial Guinea. But when business soured, he hoped the United States would sweeten the deal. That hope did not

pan out.  After Jones sued his employer in the Eastern District of Michigan, the district court dismissed his complaint under the doctrine of *forum non conveniens*.  Jones now asks us to reverse that decision.  We are unconvinced that there was a clear abuse of discretion.  We **AFFIRM**.

## I.

Paul Jones is a Michigan citizen who has worked overseas most of his professional life.  He began working in Equatorial Guinea around 2007. In 2011, he started a company—IPX International Equatorial Guinea, S.A.—to provide telecommunication and internet services in Equatorial Guinea.  As its name suggests, IPX International Equatorial Guinea, S.A. is incorporated in Equatorial Guinea and its principal place of business is in the country's capital.  Like many founders, Jones wore several hats at his company, including shareholder, director, and employee.

This case is about Jones's role as an employee.  Jones worked as a Director General under an annual contract.  Each year, Jones negotiated and signed his contract in Equatorial Guinea.  He then lived and worked there during the contract's term.

Jones and his company both did quite well, but financial success could not sustain the relationship.  IPX International decided in 2015 to open a subsidiary in the United States.  Given his ties to Michigan, Jones urged the company to open the subsidiary there.  IPX International agreed and sent Jones to Michigan to set up shop.  That was supposed to take six months.  Jones would then return to Equatorial Guinea.  But after Jones arrived in Michigan, IPX International learned that he may have been stealing money and neglecting important business relationships.  The company then suspended Jones so it could investigate.

For his part, Jones claims that the suspension was a pretext to divest him of his stock and that IPX International breached his employment contract.  He thus sued for breach of contract in the Eastern District of Michigan.  The district court found that the case should be tried in Equatorial Guinea and dismissed the complaint under *forum non conveniens*.  Jones now appeals that decision.

**II.**

*Forum non conveniens* decisions are "committed to the sound discretion of the trial court." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981). We thus review for "clear abuse of discretion." *Zions First Nat'l Bank v. Moto Diesel Mexicana, S.A. de C.V.*, 629 F.3d 520, 523 (6th Cir. 2010) (citation omitted). Under that standard, we give "substantial deference" to the district court when it considers all relevant interests and balances those interests reasonably. *Piper Aircraft*, 454 U.S. at 257.

**III.**

*Forum non conveniens* is a common law doctrine that allows a district court not to exercise its jurisdiction. *Hefferan v. Ethicon Endo-Surgery Inc.*, 828 F.3d 488, 492 (6th Cir. 2016) (quotation omitted). In the federal system, *forum non conveniens* has been largely replaced by a statutory scheme that allows district courts to dismiss or transfer cases when better forums are available. *See* 28 U.S.C. §§ 1404(a) and 1406(a). *Forum non conveniens* operates similarly to that statutory scheme, nonetheless it is distinct. It generally applies when the alternative forum is in a foreign country, rather than in a different district within the federal system. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007) (quotations omitted).

When courts apply *forum non conveniens*, there are three considerations: (1) whether an adequate alternative forum is available; (2) whether a balance of private and public interests suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court; and (3) the amount of deference to give the plaintiff's choice of forum. Sometimes we call those considerations part of a three-step analysis. *Hefferan*, 828 F.3d at 492. Other times we frame the first two considerations as steps and then separately address deference to the plaintiff's choice of forum. *See Wong v. PartyGaming Ltd.*, 589 F.3d 821, 830 (6th Cir. 2009) (citation omitted); *Duha v. Agrium, Inc.*, 448 F.3d 867, 873 (6th Cir. 2006) (citations omitted). Regardless of which framing is best, all three considerations matter here. We will address them in turn.

### A.  Alternative Forum

When a court declines to exercise jurisdiction under *forum non conveniens*, it is saying that the case should be tried elsewhere.  That presupposes that an alternative forum exists, which requires another forum to be both available and adequate.  *See Piper Aircraft*, 454 U.S. at 254 n.22.  The question here, then, is whether Equatorial Guinea is an available and adequate forum.

An alternative forum is available if the defendant is amenable to process there.  *Id.*; *Hefferan*, 828 F.3d at 494.  IPX International submitted an affidavit stating that it is amenable to process in Equatorial Guinea.  Jones concedes that point as well, stating that it is obvious.  Thus, Equatorial Guinea is an available forum.

The contentious issue is whether Equatorial Guinea is an adequate forum.  A forum is adequate if it can remedy the alleged harm.  *Id*.  The alleged harm here is that IPX International did not pay Jones all it owed him under his employment contract.  IPX International submits that Equatorial Guinea recognizes a cause of action to remedy that harm, which Jones does not dispute.  So there is a remedy for the alleged harm.

Typically that would end the inquiry, but not here.  Jones contends that suing in Equatorial Guinea is an inadequate remedy because the country's judiciary is corrupt and because he faces risk of persecution.  When a plaintiff challenges the sufficiency of another country's legal system, we examine whether the differences between that legal system and ours "render the possible remedy so clearly inadequate that forcing a plaintiff to bring suit there would be unjust."  *Hefferan*, 828 F.3d at 495.  In rare circumstances, those differences can include serious, non-legal obstacles like persecution, corruption, and political unrest.  *See Rustal Trading US, Inc. v. Makki,* 17 F. App'x 331, 335 (6th Cir. 2001) (citations and quotations omitted).

Jones's fear of corruption and persecution may be understandable, but the district court did not abuse its discretion when concluding that Equatorial Guinea is an adequate forum.  Starting with Jones's concern about corruption, "general allegations of corruption" do not support finding that an alternative forum is inadequate.  *Id.* (citing *El-Fadl v. Central Bank of Jordan*, 75 F.3d 668, 678 (D.C. Cir. 1996)).  Jones largely relies on Investment Climate

Statements published by the U.S. Department of State. Admittedly, those Statements criticize the Equatorial Guinean judiciary. They say, for example, that the "judicial system is not independent" and that there is "[c]orruption throughout the government, including the judiciary[.]" Those are general allegations, however, that do not address the nuances of this case—particularly because the Statements focus on investment risks rather than employment disputes. Thus, they are not controlling.

But Jones also makes allegations that could be considered particularized. He, for example, notes that his business partner—who is the majority shareholder of IPX International— is related to the President of Equatorial Guinea. And the President also serves as the Chief Magistrate of the judiciary. That may be a legitimate cause for concern, but it does not require finding that Equatorial Guinea is an inadequate forum. "It is not the business of our courts to assume the responsibility for supervising the integrity of the judicial system of another sovereign nation." *Chesley v. Union Carbide Corp.*, 927 F.2d 60, 66 (2d Cir. 1991) (quotation omitted). For that reason, federal courts throughout the country consistently reject allegations of corruption in foreign judicial systems. *See* 14D Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3828 n.11 (4th ed. 2018) (collecting cases). We cannot fault the district court for doing the same.

We now turn to Jones's fear of persecution. To warrant reversal, that fear needs to be "well founded." *Rustal Trading*, 17 F. App'x at 335 (citation omitted). Jones again relies on the State Department Statements, which we said are too general to be controlling. But he also makes a particularized allegation that he will be falsely arrested and prosecuted. We do not take that concern lightly, but it is unsupported. Jones's best piece of evidence seems to be an affidavit stating that his brother in law—who also works for IPX International—had his passport confiscated shortly after Jones's suspension. But IPX International's corporate attorney took the passport, not Equatorial Guinea. And nothing in the record suggests that the confiscation was unjustified. So even that evidence fails to show a well-founded fear that Equatorial Guinea will wrongly arrest and prosecute Jones.

In sum, the district court did not abuse its discretion when finding that Equatorial Guinea is an available and adequate forum.

## B.  Balance of Private and Public Interests

If an adequate alternative forum is available, then courts examine whether the plaintiff's choice of forum is unnecessarily burdensome.  *Zions First*, 629 F.3d at 523.  To guide that analysis, courts look to the private and public interests that the Supreme Court listed in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947).  *Id.*  We will start with the private interests and then turn to the public interests.

### 1.  Private Interests

In *Gulf Oil*, the Supreme Court announced a non-exhaustive list of private interests to consider, including "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive."  330 U.S. at 508.  Here, the district court held that those interests favor trying the case in Equatorial Guinea.  In support, the district court found that most of the witnesses and key documents are in Equatorial Guinea and that the witnesses can be compelled to testify there.  Those findings are supported by an affidavit[1] stating that six key witnesses live in Equatorial Guinea, four of those witnesses are unwilling to travel to the United States for this litigation, and the key documents are in Equatorial Guinea.

Jones raises several challenges on appeal.  First, he asks us to weigh the interests differently.  In support, he notes that some of the key witnesses previously traveled to the United States and that IPX International could compel them to travel here again.  He also claims that IPX International should already possess some of the key documentary evidence, so production will not need to be compelled.  Even if those factual allegations are true, Jones has not shown that the district court's balancing was unreasonable.  So we give substantial deference to the

---

[1]In passing, Jones challenges the adequacy of the affidavit claiming that it is "hearsay and marginally relevant."  We do not consider that here because Jones did not fully develop the argument and the Supreme Court has suggested that "affidavits describing the evidentiary problems" are sufficient.  *Piper Aircraft*, 454 U.S. at 258–59.

district court's determination that, on balance, the private interests favor trying the case in Equatorial Guinea. *Piper Aircraft*, 454 U.S. at 257.

Second, Jones says that the district court failed to consider the cost of flying the key witnesses from Equatorial Guinea to the United States. He is correct, so the district court erred because the cost of attendance is a relevant interest. That said, the error is harmless. To use Jones's words, "the flights are relatively expensive." If anything, that favors trying the case in Equatorial Guinea. Not quite willing to go that far, Jones maintains that the overall cost "does not favor either party." We will give Jones the benefit of the doubt. But if cost does not favor Jones's position, then the district court's failure to consider it does not warrant reversal.

Finally, Jones argues that the district court ignored the practical problems of a trial in Equatorial Guinea. In support, he repeats his earlier arguments: the Equatorial Guinean judiciary is corrupt and he fears persecution. We already explained why those concerns are unpersuasive. *See* Section III.A.

## 2. Public Interests

Looking again to *Gulf Oil*, the public interests we consider include the administrative difficulties of litigation in congested centers instead of the suit's place of origin, the burden of jury duty on citizens of communities with no relation to the case, the importance of trying the case in view and reach of others that may be affected, the local interest in having localized controversies decided at home, and the appropriateness of having trial at home with the law that governs the case. 330 U.S. at 508–09. The district court held that those factors favor trying the case in Equatorial Guinea. In support, the district court made two key findings. First, the court found that the case is local to Equatorial Guinea because that is where Jones started his relationship with IPX International, executed his employment contracts, and received performance evaluations. The court also noted that IPX International suspended Jones and ceased payments to him from Equatorial Guinea. Second, the court found that Equatorial Guinean law governs the case under the underlying employment contract's choice-of-law provision.

Jones challenges those findings on two grounds.  Like with the private interests, he first asks us to rebalance the public interests.  If we do so, Jones says we should find that the case is local to Michigan because he went there to open IPX International's subsidiary and the dispute arose during that time.  Fair enough, but it is not our role to rebalance the interests.  Instead, Jones needs to show that the balancing below was unreasonable.  He did not make that showing, so we give substantial deference to the district court's determination.  *Piper Aircraft*, 454 U.S. at 257.

Jones next contends that Michigan law governs the contract, thus the district court erroneously considered the burden of applying Equatorial Guinean law.  We are unpersuaded.  Jones relies on the employment contract's choice-of-law provision, which provides that disputes will be decided "in accordance with the applicable provisions of the 'Labor Law' and state laws and regulations."[2]  "Labor Law" is described earlier in the contract as "The Labor Law of Equatorial Guinea."  But Jones homes in on the reference to "state laws" and says, without citation or analysis, that must mean Michigan law governs because there are no states in Equatorial Guinea.  Conflict of laws is a complicated doctrine, so that argument is far too skeletal for us to consider.  *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (quotation omitted).

But even if Jones fully formed his argument, he still would not prevail.  The public interests favor dismissal not just when a court has to apply foreign law, but also when the court "would be required to *untangle problems* in conflict of laws[.]"  *Piper Aircraft*, 454 U.S. at 251 (quotation omitted) (emphasis added).  A plain reading of the choice-of-law provision suggests Equatorial Guinean law governs.  If somehow Michigan law applies instead, then there is a complicated conflict-of-laws problem that needs to be untangled.  That, too, favors dismissing the case, so the district court did not abuse its discretion.

---

[2]The record includes competing copies of the employment contract, one that is signed and one that is not. We rely on the signed copy.

**C. Deference to Plaintiff's Choice of Forum**

Finally, we consider whether the district court properly deferred to Jones's choice of forum. "[T]he central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient[.]" *Piper Aircraft*, 454 U.S. at 256. Courts presume that plaintiffs choose convenient forums, so a plaintiff's choice of forum is given deference. *See Hefferan*, 828 F.3d at 493.

Jones asserts that the district court did not give his choice of forum *any* deference. That goes too far. Here, the district court concluded that the private and public interests "strongly weigh" in favor of dismissal. In *Gulf Oil*, the Supreme Court said that a plaintiff's choice of forum should be disturbed only when the private and public interests balance "strongly in favor" of dismissal. 330 U.S. at 508. The district court could have been more explicit about deferring to Jones's selection. But by looking at which direction the interests strongly weighed, the district court in effect applied the deference that *Gulf Oil* requires.

Jones also argues that the district court should have given his choice of forum heightened deference because he is a United States citizen. Our caselaw supports that position in general. *See Duha*, 448 F.3d at 873–74 (reversing when the district court failed to indicate that it was giving heightened deference to a United States citizen's choice of forum). But here, Jones faces two problems.

First, he did not request heightened deference below. In fact, he did not even cite *Duha*. Jones instead devoted just two sentences to deference. In the first, he noted that a plaintiff's choice of forum is given deference. He explained, in the second, that because of that deference, dismissal would be proper only if the private and public interests balance "strongly in favor" of dismissal. As we said, the district court held that the interests "strongly weigh" in favor of dismissal. So the district court applied the precise amount of deference that Jones requested below. We cannot find a clear abuse of discretion because Jones now wishes he had asked for more.

Even if Jones could expand his request for deference on appeal, we are unpersuaded that the district court erred. *Forum non conveniens*, as we mentioned, is largely intended to secure convenient trials, and we defer to a plaintiff's choice of forum based on an assumption that the

plaintiff will choose a convenient forum. That assumption is stronger when a plaintiff picks his home forum, so we give greater deference in those circumstances. *Hefferan*, 828 F.3d at 493 (citation omitted). We likewise defer less to a plaintiff who picks a foreign forum because the assumption is weaker. *Id.* Those assumptions and the corresponding levels of deference are helpful tools, not oppressive masters. When the facts plainly show that the assumptions do not hold true, then courts need not adhere blindly to the corresponding levels of deference. *See id.* ("Although descriptively accurate and useful in many cases, that is not an unyielding rule that district courts must apply with equal force in every situation.").

Yet that is what Jones asks us to do here. Jones may be a United States citizen, but nearly everything else about this case suggests he did not select his home forum. Jones spent his professional life abroad and lived in Equatorial Guinea since 2007. In 2011, he formed his company in Equatorial Guinea to provide services there. Since then, he continually conducted business, signed contracts, and received payments in Equatorial Guinea. There is no evidence that he made similar investments of time or resources in the United States, other than coming here for a brief stint to advance his Equatorial Guinean company's interests before again returning to Equatorial Guinea.

In short, there is strong evidence that Jones is not at home in the United States. So the assumption that a United States court is most convenient for him does not hold true. The district court thus acted within its discretion when it did not give heightened deference to his choice of forum. *See id.* at 494 (finding no abuse of discretion when a district court did not give heightened deference to a United States citizen domiciled elsewhere).

## IV.

In sum, Jones raises some legitimate concerns, but there was not a clear abuse of discretion. We affirm.

---

**CONCURRING IN PART AND IN THE JUDGMENT**

---

NALBANDIAN, Circuit Judge, concurring in part and concurring in judgment. Although I agree that the district court reached the correct outcome in dismissing this case on forum non conveniens grounds, I write separately because I believe that the district court overlooked an important step of the analysis. "Forum non conveniens dismissal involves a three-step analysis," and the district court must begin by determining what deference it owes to the plaintiff's forum choice. *Hefferan v. Ethicon Endo-Surgery*, 828 F.3d 488, 492 (6th Cir. 2016). Generally, American plaintiffs receive greater deference to their forum choice than foreign plaintiffs do. *See, e.g.*, *Zions First Nat'l Bank v. Moto Diesel Mexicana, S.A. de C.V.*, 629 F.3d 520, 525 (6th Cir. 2010); *Duha v. Agrium, Inc.*, 448 F.3d 867, 873–74 (6th Cir. 2006). Once the district court resolves the deference question, it must determine whether the defendant has shown that there is an adequate alternative forum and that the plaintiff's forum choice "is unnecessarily burdensome based on public and private interests." *Hefferan*, 828 F.3d at 492. Although the district court addressed the latter two steps of the analysis, it gave no hint that it considered the first step: the level of deference to confer on Jones's decision to litigate the dispute in Michigan.

Jones is entitled to at least some deference in his forum choice because he is an American citizen. The question, then, is how much and whether that deference outweighs other burdens on public and private interests. The district court did not answer that question, leaving us in a difficult position as we review its analysis. Indeed, in at least two published decisions, we have held that a district court's failure to address deference may warrant vacating its order of dismissal on forum non conveniens grounds. *Zions*, 629 F.3d at 525; *Duha*, 448 F.3d at 873–74.

But we need not reach that outcome here. Although the district court's failure to address the level of deference it owed to Jones's forum choice amounts to legal error, that error was harmless because "the record would compel the same result even under the correct legal standard." *Glen Coal Co. v. Seals*, 147 F.3d 502, 515 (6th Cir. 1998) (Boggs, J., concurring) (citing *Sierra Club v. Slater*, 120 F.3d 623, 637 (6th Cir. 1997)). For these reasons, I concur in

the majority's opinion to the extent that it is not inconsistent with my own, and I concur in the judgment.