RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 21a0254p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

PREVENT USA CORPORATION; EASTERN HORIZON
GROUP NETHERLANDS B.V.,

　　　　　　　　　　*Plaintiffs-Appellants*,

v.

VOLKSWAGEN AG; VOLKSWAGEN GROUP OF AMERICA,
INC.,

　　　　　　　　　　*Defendants-Appellees*.

No. 21-1379

─────────────────

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
No. 2:19-cv-13400—Bernard A. Friedman, District Judge.

Argued:  October 21, 2021

Decided and Filed:  November 8, 2021

Before:  SUTTON, Chief Judge; BATCHELDER and LARSEN, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:**  Matthew S. Tripolitsiotis, BOIES, SCHILLER & FLEXNER, LLP, Armonk, New York, for Appellants.  Sharon L. Nelles, SULLIVAN & CROMWELL LLP, New York, New York, for Appellees.  **ON BRIEF:**  Matthew S. Tripolitsiotis, BOIES, SCHILLER & FLEXNER, LLP, Armonk, New York, Duane L. Loft, Brianna S. Hills, BOIES, SCHILLER & FLEXNER, LLP, New York, New York, for Appellants.  Sharon L. Nelles, Steven L. Holley, Suhana S. Han, Laura Kabler Oswell, Leonid Traps, SULLIVAN & CROMWELL LLP, New York, New York, Todd A. Holleman, MILLER, CANFIELD, PADDOCK & STONE, PLC, Detroit, Michigan, for Appellees.

———————————

**OPINION**

———————————

SUTTON, Chief Judge.  This litigation has had two chapters, so far.  Chapter one grew out of a dispute between Volkswagen, a company based in Germany, and a group of companies based in Europe, called the Prevent Group, that specializes in turning around distressed automotive parts suppliers.  The seeds of the dispute, from Volkswagen's vantage point, arose when the Prevent Group organized an effort to halt supplies of their car parts in order to obtain better terms from Volkswagen, and Volkswagen responded by opting not to do business with the affiliated companies.  From the Prevent Group's vantage point, Volkswagen engineered a boycott of its companies and violated several German and European antitrust laws in the process.  Begun in 2016, this litigation initially involved claims of unfair business practices and anticompetitive behavior under German and European law and was handled by a number of German trial and appellate courts.  Volkswagen has prevailed in most of these suits, and one case is still pending before the Regional Court in Frankfurt.

Chapter two began in 2019 and was initiated by two members of the Prevent Group: Eastern Horizon Group, based in the Netherlands, and an American subsidiary (Prevent USA).  The two of them sued Volkswagen and its American subsidiary in Michigan, alleging that the carmaker unfairly prevented them from acquiring distressed automotive-parts manufacturers.  After determining that the Eastern Horizon Group and Prevent USA were trying to open another front on a dispute that should remain in Europe, the district court dismissed the complaint on the basis of forum non conveniens.  Finding no errors of law or abuse of discretion in the district court's weighing of the relevant factors, we affirm.

I.

Eastern Horizon Group is part of a network of companies called the Prevent Group.  The group is located in Europe, and the affiliated companies specialize in turning around failing or underperforming automotive-parts suppliers.  Prevent USA Corporation is a subsidiary formed to acquire distressed manufacturers in the United States, and it is headquartered out of an apartment

building in Pittsburgh, Pennsylvania. Prevent-owned companies have supplied Volkswagen, a German company, with parts for several years.

Roughly five years ago, the relationship soured. Eastern Horizon and Prevent USA (collectively Prevent USA from now on unless otherwise specified) claim that Volkswagen abruptly cancelled its contracts because the Prevent Group's acquisition of several manufacturers threatened Volkswagen's single-buyer status for car parts. Volkswagen used this position, Prevent USA claims, to keep the prices of its inputs low by buying only from small companies with little bargaining power. For its part, Volkswagen alleges that a Prevent company unexpectedly demanded millions of euros in additional payments in the middle of a contract and halted production when Volkswagen declined, prompting the carmaker to conclude that the Prevent Group could not be trusted as a business partner.

According to Prevent USA, Volkswagen launched a coordinated initiative called "Project 1" to impede well-resourced suppliers like the Prevent Group from acquiring distressed manufacturers. R.1 at 35. Volkswagen reportedly used a variety of means to frustrate the Prevent Group's acquisition of struggling parts manufacturers. One of them involved option agreements that gave Volkswagen the right to purchase the target company if Volkswagen objected to a prospective buyer. Prevent USA claims that it learned about Project 1 through internal documents, including presentations and spreadsheets, that a Volkswagen executive leaked. In response to this conduct, Prevent Group companies sued Volkswagen at least five times in German courts.

Prevent USA alleges that Volkswagen's anticompetitive efforts frustrated its plans to acquire struggling suppliers in the United States. When the Prevent Group attempted to buy the Brazilian manufacturing arm of the Michigan company Tower International, Tower's CEO informed it that Volkswagen would have to approve the Group's purchase of the Brazilian operations. Prevent USA also claims that Tower admitted to signing an option agreement to allow Volkswagen to purchase the Brazilian operations if a Prevent entity attempted to acquire them. Prevent USA infers that Project 1 likewise frustrated its efforts to acquire six other Michigan-based companies on a "Problematic Suppliers" list that Volkswagen kept. *Id.* at 45–46.

Prevent USA sued Volkswagen in federal court, alleging violations of §§ 1 and 2 of the Sherman Act and several state laws.  Prevent USA alleges that Project 1 blocked the Prevent Group from profiting from potential American investments, "caused loss to Prevent's industry goodwill and market reputation, and substantially decreased the overall market valuation of the Prevent Group." *Id.* at 57.

Volkswagen moved to dismiss on forum non conveniens, among other grounds, arguing that the dispute should proceed in Germany.  The district court agreed, reasoning that Germany was an adequate and available alternative forum, that the public and private interest factors favored dismissal, and that the choice of forum by the one American plaintiff (Prevent USA) merited little deference because it was merely a shell company acting as a "scouting party" for the Prevent Group.  R.56 at 12–21.

II.

The phrase forum non conveniens (an "unfitting forum") may suggest a more venerable history than the cases reveal.  As Latin phrases go, this one has a relatively recent vintage. Minted by a Scottish court in 1845, the common law doctrine, which allows a court to dismiss a case in favor of a more convenient forum, has attained by some accounts the status of "Scotland's most significant legal export in the field of private international law."  Ardavan Arzandeh, *The Origins of the Scottish Forum Non Conveniens Doctrine*, 13 J. Priv. Int'l L. 130, 130–32 (2017).  The doctrine gained popularity in the Anglo-American legal world after the House of Lords recognized it in 1926.  *Société de Gaz de Paris v. Société Anonyme de Navigation*, 1926 SC (HL) 13.  The U.S. Supreme Court mentioned forum non conveniens for the first time in the 1930s.  *See Rogers v. Guar. Tr. Co. of N.Y.*, 288 U.S. 123, 151 (1933) (Cardozo, J., dissenting); *Can. Malting Co. v. Patterson S.S.*, 285 U.S. 413, 423 (1932) (explaining "[c]ourts of equity and of law also occasionally decline, in the interest of justice, to exercise jurisdiction, where the suit is between aliens or nonresidents, or where for kindred reasons the litigation can more appropriately be conducted in a foreign tribunal").

But the Court did not provide a full explanation of the American common law doctrine and the factors bearing on its invocation until *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947).

With Justice Jackson writing for the majority, *Gilbert* held that the district court's power to dismiss a case on forum non conveniens grounds is rooted in the reality that "a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." *Id.* at 507. Justice Black dissented, insisting that a court faced with a cognizable claim based on alleged violations of common law or statutory rights may not decline to exercise jurisdiction absent congressional authorization, no matter the inconvenience to the defendant. *Id.* at 513–15 (Black, J., dissenting). Since then, the Court has stuck to Justice Jackson's path, authorizing trial courts to dismiss a case on forum non conveniens grounds. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981); *see* Lonny S. Hoffman & Keith A. Rowley, *Forum Non Conveniens in Federal Statutory Cases*, 49 Emory L.J. 1137, 1153–54 (2000).

In deciding whether to dismiss a case on this basis, "the central focus" is "convenience." *Piper Aircraft*, 454 U.S. at 249. Three questions guide a district court's discretion: Is there an adequate alternative forum? Would the chosen forum be unduly burdensome to the defendant or court given the private and public considerations at play? Are there legitimate reasons for denying the plaintiff its choice of forum? *Jones v. IPX Int'l Eq. Guinea, S.A.*, 920 F.3d 1085, 1090 (6th Cir. 2019).

In reviewing a forum non conveniens ruling, we ask whether the district court committed a "clear abuse of discretion." *Piper Aircraft*, 454 U.S. at 257. We give "substantial deference" to district court decisions that get the process right—that account for all of the "relevant public and private interest factors." *Id.*; *see Jones*, 920 F.3d at 1093. Fresh review applies to questions of law, such as whether an adequate alternative forum exists. *DRFP L.L.C. v. Republica Bolivariana de Venezuela*, 622 F.3d 513, 518 (6th Cir. 2010).

1. Is there an available and adequate alternative forum? Countries that have jurisdiction over the defendant typically qualify. *Piper Aircraft*, 454 U.S. at 254 n.22. In the "rare circumstances" in which "the remedy offered by the other forum is clearly unsatisfactory," American courts tend to keep the case. *Id.* But the reality that the foreign venue makes it more difficult to establish the claim or that the foreign law is less generous to prevailing plaintiffs does not establish unavailability. *See, e.g.*, *id.* at 249, 255.

Germany is an adequate forum to hear this case.  German antitrust law gives its courts jurisdiction over "all restraints of competition having an effect within the area of application of this Act, even if they were caused outside the area of application of this Act."  *Gesetz gegen Wettbewerbsbeschränkungen* [GWB] [Act against Restraints of Competition], § 185 (2), https://www.gesetze-im-internet.de/englisch_gwb/englisch_gwb.html#p1903  (Ger.).    Prevent USA has adequately alleged an anticompetitive effect within Germany, as it identified antitrust injuries that arose from missed investment opportunities and its European parent's resulting stunted growth, all in contrast with Volkswagen's German-based market dominance during this period.  On top of that, Prevent USA alleges that, as a result of Project 1, its parent company (based in Europe) missed out on key investment opportunities within Germany.

As between a Germany-based antitrust lawsuit and an American one, it appears that the German one would reach *more* conduct and more injuries.  In Germany, the Prevent Group also may bring antitrust claims under European law.  The Rome II Regulation, which regulates choice of law in private lawsuits within the European Union, provides a mechanism for bringing before a single member state's court anticompetitive behavior affecting many European states.  Clay H. Kaminsky, *The Rome II Regulation: A Comparative Perspective on Federalizing Choice of Law*, 85 Tul. L. Rev. 55, 66 (2010).  A plaintiff may bring an antitrust action alleging effects in multiple countries in the "court of the domicile of the defendant" based on that country's law, "provided that the market in that Member State is amongst those directly and substantially affected by the restriction of competition."  Commission Regulation 864/2007, on the Law Applicable to Non-Contractual Obligations (Rome II), 2007 O.J. (L 199) 44.  That means the Prevent Group could bring an action in German court for anticompetitive effects across the European Union.  Not so for a Sherman Act claim, which would not reach foreign conduct that produces only anticompetitive harm abroad.  Absent proof of domestic injury, Prevent USA could not recover for any of the alleged European antitrust violations in an American court. *F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 165 (2004).  This factor favors a German court.

This approach, by the way, may not necessarily end Prevent USA's opportunity to sue in an American federal court.  A dismissal without prejudice has no res judicata effect on a

subsequent claim.  9 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2367 (4th ed. 2021).  And it may be the case—we need not finally decide—that claims dismissed on forum non conveniens grounds may be refiled in federal court if the alternative forum itself declines to exercise jurisdiction or otherwise determines it lacks authority to address injuries located solely on American soil.  *See Butler v. Denka Performance Elastomer LLC*, 806 F. App'x 271, 274 (5th Cir. 2020) (per curiam); *Sigalas v. Lido Mar., Inc.*, 776 F.2d 1512, 1516 (11th Cir. 1985); *Fischer v. Magyar Allamvasutak Zrt.*, 777 F.3d 847, 852 (7th Cir. 2015).

2. Do the private and public interest factors favor an American or German court?  Start with the private considerations:  access to evidence, mechanisms for ensuring that unwilling witnesses participate, and costs of obtaining testimony from willing witnesses.  *Gilbert*, 330 U.S. at 508; *Duha v. Agrium, Inc.*, 448 F.3d 867, 875 (6th Cir. 2006).  The question through it all is whether these considerations "establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience."  *Piper Aircraft*, 454 U.S. at 241 (quotation omitted).

The district court reasonably weighed these private interest factors.  German and Portuguese are the languages of choice of the documents purporting to establish Project 1, and the imperative of translation into the language of an American forum favors dismissal.  *Duha*, 448 F.3d at 876–77.  Most of the witnesses also reside in Europe.  Prevent USA's allegations about the relevant presentations and spreadsheets, all directed at German executives, suggest that much of the evidence will be in German, and that the German courts will be able to access these documents and witnesses far more conveniently than American courts could.  The district court reasonably thought as much, and not one major private consideration disrupts this balancing.

Turn to the public interest factors:  local interest in the dispute, the location of the injury, the fullness of the court's docket, preference for trying cases in the place of the governing law, hesitance to apply foreign law, and desire to avoid conflict-of-law problems.  *Wong v. PartyGaming Ltd.*, 589 F.3d 821, 832 (6th Cir. 2009).  These factors ultimately speak to an American court's potential "administrative and legal problems" with trying the case.  *Piper Aircraft*, 454 U.S. at 241 (quotation omitted).

The district court reasonably applied these considerations and followed a well-travelled path in doing so. It found that "Michigan jurors would have scant relation to this case" and that, based on Prevent USA's allegations, "Germany is the country with the greatest interest in the controversy." R.56 at 17–18. Both of the "local-interest considerations"—namely, "the parties' connections to the local forum and the location of the injury"—favor dismissal. *Hefferan v. Ethicon Endo-Surgery Inc.*, 828 F.3d 488, 500 (6th Cir. 2016). In truth, the only instance in which Prevent USA specifically alleged in its complaint that Volkswagen's anticompetitive behavior blocked its concrete efforts to acquire a company involved the *Brazilian* subsidiary of Tower International. Without more specific pleadings about blocked Prevent USA efforts to acquire the American operations of Michigan-based companies on the "problematic suppliers" list, we share the district court's concern over whether the plaintiffs have shown a meaningful connection between the alleged injury and the United States. No abuse of discretion occurred.

3. Are there legitimate reasons for denying Prevent USA its choice of forum? Because forum non conveniens is designed to "secure convenient trials," it makes sense to "defer to a plaintiff's choice of forum based on an assumption that the plaintiff" knows its self-interest better than anyone else and thus "will choose a convenient forum." *Jones*, 920 F.3d at 1094. In the abstract, this consideration favors an American forum. But that assumption is less valid in the case of a foreign plaintiff or a "shell corporation" set up primarily for suing within the United States, *Rustal Trading US, Inc. v. Makki*, 17 F. App'x 331, 338 & n.6 (6th Cir. 2001), and, worse in this instance, when affiliates of the new American corporation have already tried and largely failed to win on similar grounds in a foreign forum.

The convenience of handling this lawsuit in Michigan is not obvious, even from Prevent USA's perspective. Keep in mind that the Prevent Group brought five different actions in Germany before bringing this American lawsuit. And Prevent USA, a corporation designed to acquire American companies but that has not yet succeeded in doing so, has several hallmarks of a "shell company"—a place of business in an apartment, few employees, and little apparent presence or activity in this country—whose forum choice merits little deference. *See id.* Regardless of the exact size of Prevent USA's operations, the litigation history demonstrates that the real party in interest is the Prevent Group, which as a foreign plaintiff enjoys less deference

in its choice of forum. *Piper Aircraft*, 454 U.S. at 255. It is difficult to be overly concerned that Volkswagen "will uproot plaintiffs as a form of litigation strategy," *Hefferan*, 828 F.3d at 493, given how many German roots this long-running dispute already has. The Prevent Group's own prior actions confirm as much, as it initially launched this litigation in 2016 in Germany, a forum choice that one long-standing member of the Prevent Group (Eastern Horizon) cannot fairly distance itself from and that the creation of an American subsidiary (Prevent USA) does not make go away.

Trying to fend off this conclusion, Prevent USA claims that antitrust actions may *never* be dismissed for forum non conveniens. It urges us to follow the Fifth Circuit's decision in *Industrial Investment Development Corp. v. Mitsui & Co.*, 671 F.2d 876, 890–91 (5th Cir. 1982), which reached that conclusion for two reasons. The Fifth Circuit first looked to *United States v. National City Lines, Inc.*, 334 U.S. 573 (1948) (*National City Lines I*), which held that the broad venue provision of the Clayton Act precluded a federal court from dismissing a lawsuit on forum non conveniens grounds and making the claimant file it in a different federal district. The Fifth Circuit held that this precedent "appl[ied] fully" to foreign courts, not just domestic ones. *Mitsui*, 671 F.2d at 890. It made no difference to the Fifth Circuit that Congress repudiated *National City Lines I* later that year by enacting a domestic venue transfer statute, 28 U.S.C. § 1404(a), or that the Court recognized the impact of § 1404 and limited its decision in *United States v. National City Lines*, 337 U.S. 78, 84 (1949) (*National City Lines II*). As the Fifth Circuit saw it, *National City Lines II* did not disturb its predecessor's holding that common law dismissal under forum non conveniens is inappropriate for antitrust actions. *Mitsui*, 671 F.2d at 890 n.18.

The Fifth Circuit next determined that, with or without *National City Lines I*, it would not apply forum non conveniens to Sherman Act claims. In its view, the Act's focus on penalizing and deterring monopolistic behavior made dismissal in favor of a foreign venue inappropriate because it risked placing anticompetitive violations "beyond the reach of the Sherman Act." *Id.* at 891.

We are not persuaded. *National City Lines I* for one does not control this case. The Clayton Act says nothing about forum non conveniens dismissal. Although its special venue

provision generously authorizes a plaintiff to sue "in any district wherein [defendant] may be found or transacts business," nothing in that language indicates that the district court may not dismiss a case for refiling in a foreign country. 15 U.S.C. § 22. As then-Chief Judge Breyer reasoned about a similar special venue provision in a federal securities statute, "[*t*]*he language of such a statute does not forbid transfer*" but "simply adds to the number of courts *empowered* to hear a plaintiff's claim." *Howe v. Goldcorp Invs., Ltd.*, 946 F.2d 944, 949 (1st Cir. 1991). If a general venue statute like § 1404(a) does not bar the international transfer of a lawsuit, as *Piper* confirms, it is hard to see why a special venue provision would do so implicitly. *Id.* at 948–49.

The Fifth Circuit also is not the only court of appeals to consider this question. The First Circuit, as suggested, took a different approach. It reasoned that *National City Lines I* had no role to play in view of the later enactment of § 1404 and the Supreme Court's decision in *National City Lines II*. *Id.* It explained that, under a special venue provision in the Securities Act of 1934, which allowed the plaintiff to sue in the jurisdiction "wherein any act or transaction constituting the violation occurred," the common law doctrine of forum non conveniens remained a viable option. *Id.* at 948, 950. Then-Chief Judge Breyer reasoned that the statute does not prohibit transfer explicitly or implicitly and thus does not end the common law tradition of allowing such transfers. *Id.* at 949–50.

The Second Circuit followed a similar path in the context of a claim just like this one, a Sherman Act complaint. *Cap. Currency Exch., N.V. v. Nat'l Westminster Bank PLC*, 155 F.3d 603, 606 (2d Cir. 1998). It held that, even after *National City Lines I*, antitrust claims may be dismissed under forum non conveniens. *Id.* at 608–09. In doing so, it relied on the First Circuit's decision in *Howe*, concluding that the Supreme Court had "considered only domestic transfers; it did not consider international transfers at all." *Id.* at 608 (quoting *Howe*, 946 F.2d at 949). It saw no good reason why *National City Lines I* required any particular approach in the international context because the Supreme Court's decision focused on domestic antitrust litigation.

Prevent USA invokes legislative history in an effort to show that the relevant antitrust and securities acts differ, offering a reason to distinguish *Howe* (but not *Capital Currency Exchange*). Two answers come to mind. The first is that the argument does little to counter the

First Circuit's persuasive (and non-legislative-history-based) explanation why *National City Lines I* does not advance the plaintiffs' cause. The second is that the argument illustrates a vice of relying on legislative history. If accepted, this approach would require us to conclude that two statutes with materially identical venue provisions—the Sherman Act and the 1934 Securities Act—would somehow generate opposite conclusions about the continuing vitality of the common law doctrine of forum non conveniens. Whatever virtues this kind of argument advances, the rule of law is not among them. By creating a "hodge-podge" of different conclusions about a court's power to dismiss a case for statutes with similar special venue provisions, *Howe*, 946 F.2d at 950, we would sacrifice consistent and predictable decision making.

Confirming the risk, the Fifth Circuit has brought that prediction to fruition. *Mitsui*, as shown, barred a forum non conveniens dismissal of an antitrust lawsuit given the statute's special venue provision (15 U.S.C. § 22), which allows plaintiffs to sue "in any district wherein [defendant] may be found or transacts business." 671 F.2d at 890 & n.17 (quotation omitted). But other Fifth Circuit cases reach a different result with other federal statutes that have similar venue provisions. In one, the court upheld a forum non conveniens dismissal of a claim premised on the Racketeer Influenced and Corrupt Organizations Act, or RICO. *Kempe v. Ocean Drilling & Expl. Co.*, 876 F.2d 1138, 1144 (5th Cir. 1989). That statute has a special venue provision that allows plaintiffs to sue in "any district in which" defendant "resides, is found, has an agent, or transacts his affairs." 18 U.S.C. § 1965(a). In another, the court noted the availability of a forum non conveniens dismissal of a tort claim under the Jones Act, *In re Air Crash Disaster Near New Orleans*, 821 F.2d 1147, 1163 n.25 (5th Cir. 1987) (en banc), which had a since-repealed venue provision (46 U.S.C. § 688) that authorized jurisdiction "under the court of the district in which the defendant employer resides or in which his principal office is located." To give the Clayton Act's special venue provision different legal effect than similarly worded provisions of other statutes based on a handful of floor statements would be contrary to our duty to "interpret laws rather than reconstruct legislators' intentions." *I.N.S. v. Cardoza-Fonseca*, 480 U.S. 421, 452–53 (1987) (Scalia, J., concurring in the judgment).

One might wonder whether *Piper Aircraft*'s dismissal for forum non conveniens to international courts is limited to common law claims. That is a fair question. *Piper Aircraft* after all considered only the dismissal of common law tort claims. 454 U.S. at 239–40. But nothing in the decision limits its holding to common law claims, and in many cases the type of tort claim at issue in *Piper Aircraft* is created by a statute, say a tort claim under the Jones Act. Court after court, moreover, has declined to draw this line, as shown by the many courts of appeals that have allowed forum non conveniens dismissals of federal statutory claims. *See Howe*, 946 F.2d at 950 (Securities Act); *Cap. Currency Exch.*, 155 F.3d at 609 (Sherman Act); *Trotter v. 7R Holdings LLC*, 873 F.3d 435, 442 (3d Cir. 2017) (Jones Act); *Kempe*, 876 F.2d at 1144 (RICO); *Gemini Cap. Grp., Inc. v. Yap Fishing Corp.*, 150 F.3d 1088, 1092 (9th Cir. 1998) (RICO); *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 952–53 (11th Cir. 1997) (RICO).

Also unpersuasive are Prevent USA's other arguments for barring the use of forum non conveniens in antitrust claims. It overstates the risk that dismissing this lawsuit between competitors will prohibit anyone from challenging Volkswagen's alleged anticompetitive behavior. The U.S. Department of Justice, the fifty state attorneys general, and any consumers harmed by higher car prices could still sue the company under the Sherman Act and would be less likely to have their lawsuits dismissed under forum non conveniens. 15 U.S.C. §§ 4, 15. Nor is it obvious that the German and European antitrust protections lack teeth. Consider the increasingly sophisticated antitrust legislation being written in Europe and elsewhere today that offers private remedies between competitors. *See* Daniel J. Gifford & Robert T. Kudrle, *The Atlantic Divide in Antitrust: An Examination of US and EU Competition Policy* 1 (2015) (explaining "[t]he United States and the European Union have competition laws that are broadly similar").

Prevent USA separately argues that Germany is not an adequate alternative forum because the German courts would not apply the Sherman Act and consequently would not award treble damages for antitrust violations. But suing under German antitrust law instead of the Sherman Act does not "render the possible remedy so clearly inadequate that forcing a plaintiff to bring suit [in Germany] would be unjust." *Hefferan*, 828 F.3d at 495. Differences in the

amount of recovery will not make a forum inadequate, even when it lacks punitive damages, *id.*, as long as the forum provides some remedy, *Piper Aircraft*, 454 U.S. at 255.  That is amply true here.

Prevent USA adds that Germany is not an available forum because German courts would not be able to exercise jurisdiction over codefendant Volkswagen Group of America.  But Volkswagen's German law expert explained that its American subsidiary could be held liable as a joint tortfeasor for inflicting intentional economic damage to the Prevent Group.  Besides, we have affirmed dismissal for forum non conveniens even when the other forum lacked jurisdiction over one defendant where other affiliated corporate entities from whom the plaintiffs could recover were amenable to service.  *Est. of Thomson ex rel. Est. of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 365 (6th Cir. 2008).

We affirm.