NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0317n.06

Case No. 23-3971

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Jul 23, 2024
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| RICARDO MARTINEZ-PORTE | ) | |
| Plaintiff-Appellant, | ) | |
|  | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO |
|  | ) | |
|  | ) | |
| MULTI-COLOR CORPORATION; W/S PACKAGING GROUP, INC. | ) | |
| Defendants-Appellees. | ) | OPINION |
|  | ) | |

Before: CLAY, McKEAGUE, and READLER, Circuit Judges.

**CHAD A. READLER, Circuit Judge.** Ricardo Martinez-Porte, a Mexican citizen, believes that two American corporations illegally seized control of the Mexican printing company he founded three decades ago. According to Martinez-Porte, the American entities violated Mexican corporate law when they shuttered the printing company's operations, deprived Martinez-Porte of the value of his shares, and transferred the company's assets to a Mexican competitor.

Martinez-Porte sought recourse in the United States District Court. He filed suit in the Southern District of Ohio, the principal place of business of one of the American entities. The district court, however, concluded that the suit should be heard in Mexico, the home of most of the underlying events, much of the evidence, and the governing law. Invoking the doctrine of forum non conveniens, the district court accordingly dismissed the complaint.

Both sides present compelling points on appeal. But we view the parties' forum non conveniens arguments against a backdrop favorable to the district court, applying a deferential, abuse of discretion standard of review. As no such abuse occurred here, we affirm.

I.

Over thirty-five years ago, Ricardo Martinez-Porte founded WS Packaging Mexico, S.A. de C.V. (WSMEX), a printing label company based in Mexico. After many years of growth, he sold sixty percent of WSMEX's shares to an outside investor. As those shares changed hands over time, Martinez-Porte retained his minority stake in the company as well as his position on the board of directors.

According to Martinez-Porte, W/S Packaging Group, Inc. (Packaging Group), a Wisconsin corporation, acquired a sixty percent ownership stake in WSMEX in 2008. That controlling interest, he alleges, was transferred in 2019 to Multi-Color, a Delaware corporation with its principal place of business in Ohio. According to Martinez-Porte, Multi-Color acquired its interest in Packaging Group as part of a rollup effort orchestrated by a private equity firm, at which point WSMEX's shares passed to Multi-Color.

Following Multi-Color's purported acquisition of a majority interest in WSMEX, relationships soured. Martinez-Porte claims that Multi-Color attempted to take control of WSMEX and transfer its assets to Multi-Color's Mexican subsidiary. To do so, Martinez-Porte asserts, Multi-Color tried to obtain a supermajority of shares by diluting Martinez-Porte's interest in the company and bullying him into selling his shares. When those efforts failed, Multi-Color allegedly shuttered WSMEX "without the authorization required by [WSMEX's] Bylaws." According to Martinez-Porte, Multi-Color closed all WSMEX facilities, fired its employees, transferred its customer accounts to Multi-Color's Mexican subsidiary, and looted various

WSMEX assets. From those unauthorized acts, he says, Multi-Color enriched itself by effectively seizing one hundred percent of the value of WSMEX despite owning only sixty percent of the company.

Seeking a remedy, Martinez-Porte turned to a federal court in Ohio. After first initiating a discovery proceeding under 28 U.S.C. § 1782 to obtain materials for contemplated proceedings in Mexico, *see In re Ricardo Martinez-Porte*, No. 1:21-mc-6, Martinez-Porte sued Multi-Color and Packaging Group. He alleges that defendants' actions violated WSMEX's bylaws and applicable Mexican corporate law, converted WSMEX's assets, and resulted in unjust enrichment.

Defendants moved to dismiss the action on the basis that the forum non conveniens doctrine counseled that the case be heard in Mexico. Following a hearing, the district court agreed. "Martinez-Porte's suit," the district court explained, "is better heard in Mexico, where the facts giving rise to [the] suit occurred." The district court subsequently dismissed Martinez-Porte's complaint without prejudice. In so doing, it ordered defendants to consent to jurisdiction in Mexico and accept service of process there regarding this matter. Martinez-Porte timely appealed.

II.

Forum non conveniens is a common law doctrine that authorizes a court to decline to hear a case "even though the court has jurisdiction and venue." *Hefferan v. Ethicon Endo-Surgery Inc.*, 828 F.3d 488, 492 (6th Cir. 2016) (citation omitted). Resting on convenience and efficiency notions, the doctrine affords a district court discretion to dismiss a case that, in its view, would better be tried elsewhere. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256–57 (1981). As the district court recognized, there are three questions it must address in undertaking a forum non conveniens analysis. One, is there another adequate forum capable of hearing the suit? Two, would it be unnecessarily burdensome for the defendant or court to litigate in the chosen forum in

light of public and private interests? And three, how much deference should the court afford a plaintiff's choice of forum? *Prevent USA Corp. v. Volkswagen AG*, 17 F.4th 653, 658 (6th Cir. 2021).

Our analysis is guided by the same three factors, but our role is circumscribed. We will reverse a dismissal on forum non conveniens grounds only if the district court committed a "clear abuse of discretion." *Piper Aircraft*, 454 U.S. at 257. This is a "highly deferential standard." *Instituto Mexicano del Seguro Soc. v. Stryker Corp.*, 28 F.4th 732, 735 (6th Cir. 2022) (citation omitted). As such, we rarely disturb district court decisions that "get the process right." *Id.*

A. Turn, then, to the first of those three inquiries. For a district court to dismiss a case on the basis of forum non conveniens, it must first establish that another forum can hear the case. To so qualify, the other forum must be "both available and adequate." *Jones v. IPX Int'l Equatorial Guinea, S.A.*, 920 F.3d 1085, 1090 (6th Cir. 2019). As Martinez-Porte concedes that Mexico is an adequate forum, our analysis centers on whether it is also an available one.

An alternate forum is available if the defendants are "amenable to process" there. *Piper Aircraft*, 454 U.S. at 254 n.22. We have understood this term of art to mean that a defendant must be subject to the jurisdiction of the alternate forum. *Wong v. PartyGaming Ltd.*, 589 F.3d 821, 831 (6th Cir. 2009). To aid a district court's assessment, the parties may submit evidence on the issue, including materials outside the complaint. *Piper Aircraft*, 454 U.S. at 259; *Wong*, 589 F.3d at 831. Likewise, a district court may condition dismissal on a defendant accepting service of process in another forum. *See Rustal Trading US, Inc. v. Makki*, 17 F. App'x 331, 336 (6th Cir. 2001); 14D Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 3828.3 (4th ed. June 2024 Update).

That latter scenario played out here. Believing they were already amenable to service of process in Mexico, *see* R. 16 PageID 861–62; R. 23 PageID 1167, defendants nonetheless agreed to waive service if the district court "were to condition dismissal in favor of a Mexican forum" on such a waiver. R. 23 PageID at 1168. The district court did just that. In dismissing Martinez-Porte's complaint, the court ordered defendants "to consent to jurisdiction in Mexico, and to accept service of process in Mexico regarding this matter." R.18 PageID 1147. While we have previously doubted whether an attorney's statement can suffice to show that a party consents to service in an alternate forum, *see Associação Brasileira de Medicina de Grupo v. Stryker Corp.*, 891 F.3d 615, 621 (6th Cir. 2018), and Martinez-Porte now argues that defendants failed to carry their burden to prove that Mexican law permits them to consent to service of process or jurisdiction, Martinez-Porte did not make this argument in district court. *See Sheet Metal Workers' Health & Welfare Fund of N.C. v. L. Off. of Michael A. DeMayo, LLP*, 21 F.4th 350, 357 (6th Cir. 2021); *Newburgh/Six Mile Ltd. P'ship II v. Adlabs Films USA, Inc.*, 483 F. App'x 85, 91 (6th Cir. 2012) (noting that parties can forfeit arguments regarding a district court's alleged failure to apply the appropriate burden of proof); *Duha v. Agrium, Inc.*, 448 F.3d 867, 873 n.4 (6th Cir. 2006) (refusing to consider new argument on appeal regarding availability of an alternate forum). Rather, he agreed with the district court that an order instructing defendants to accept service of process in Mexico would resolve his concerns about the forum's availability. During a hearing on the motion to dismiss, Martinez-Porte's counsel stated that his concerns about the availability and adequacy of Mexico as a forum had "largely been allayed" by defendants' willingness to accept service of process. R. 23 PageID 1222. Counsel never suggested that defendants needed to prove that Mexican law permits defendants to consent to jurisdiction, instead stressing that "the question is not could [the suit] happen in Mexico" but whether "the interest[s] of justice" favor litigating there.

5

*Id.* at 1223. In any event, should Mexico prove to be an unavailable forum for the reasons Martinez-Porte identifies, he may be able to return to the district court to vindicate his claims. *See Prevent USA*, 17 F.4th at 659 ("[I]t may be the case . . . that claims dismissed on forum non conveniens grounds may be refiled in federal court if the alternative forum itself declines to exercise jurisdiction or otherwise determines it lacks authority to address injuries located solely on American soil."). Taking all of this together, the district court did not abuse its discretion in concluding that Mexico is an available forum.

B. Next, the district court evaluated whether public and private interests favor litigating this suit in the United States or elsewhere. Beginning with the public interest factors, *see Prevent USA*, 17 F.4th at 660, the Mexican ties to this case run deep. At issue is a dispute between the shareholders of a Mexican company and the company's former president—a Mexican citizen. Martinez-Porte alleges violations of Mexican law. And the purported injury occurred in Mexico. For these reasons, the district court understandably concluded that the public interest favored Mexico.

Next consider the private interest factors: "access to evidence, mechanisms for ensuring participation of unwilling witnesses, costs of obtaining testimony from willing witnesses, opportunities to view the relevant premises, and other practical concerns such as cost and expeditiousness." *Stryker*, 28 F.4th at 738 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). The district court fairly concluded that these considerations also favor dismissal. Most of WSMEX's corporate documents are located in Mexico, including its accounting files, valuation documents relevant to alleged damages, bylaws, share registry, power of attorney, customer communications, asset transfer records, and board resolutions. Much of this material, it seems, would require translation to English were the case heard by an American court. Several potential

witnesses are also located in Mexico, including former WSMEX customers and employees, most notably, the WSMEX representative who allegedly authorized the transfer of corporate assets (most of which also remain in Mexico).

Martinez-Porte questions the district court's balancing of the private factors. Yet "it is not our role to rebalance [these] interests." *Stryker*, 28 F.4th at 738 (quoting *Jones*, 920 F.3d at 1093); *see also Piper Aircraft*, 454 U.S. at 257 (criticizing the appeals court for having "lost sight" of its standard of review and "substitut[ing] its own judgment for that of the District Court"). We thus decline to do so.

Martinez-Porte also faults the district court for failing to consider some U.S.-based evidence. For example, he asserts that the district court ignored evidence related to the identity of WSMEX's majority shareholder located in the United States. To our eye, however, the district court thoughtfully evaluated whether this evidence weighed against dismissal. In the end, it concluded that this issue would play a "minimal role in Martinez-Porte's ultimate showing of proof." We see no abuse of discretion in that conclusion.

As to other domestic evidence, the district court acknowledged that defendants are domiciled in Ohio, where their allegedly illicit plans were hatched. It also noted that some corporate records may be in the United States as well as some monies following international transfers. But ultimately, the district court concluded that the volume of relevant documents, witnesses, and events giving rise to Martinez-Porte's claims in Mexico dwarfed their corollaries in the United States. It is not our role to second guess that assessment. *Piper Aircraft*, 454 U.S. at 257.

Nor did the district court disregard Martinez-Porte's proffered need for discovery in the United States to quantify his damages. Acknowledging the point, the district court nonetheless

7

concluded that most damages-related evidence is located in Mexico. Here, too, we cannot say that the district court's conclusion was "a clear error of judgment" amounting to an abuse of discretion. *Hefferan*, 828 F.3d at 493, 498 (quotation omitted); *Stryker*, 28 F.4th at 739.

C. Finally, we consider whether the district court awarded appropriate deference to Martinez-Porte's choice of forum. Generally speaking, it "makes sense" for district courts to "defer to a plaintiff's choice of forum" as "the plaintiff knows its self-interest better than anyone else and thus will choose a convenient forum." *Prevent USA*, 17 F.4th at 660 (cleaned up). Especially so, we note, when "a domestic plaintiff initiates a suit in his home forum," where "it is presumptively convenient for the plaintiff" to litigate. *Hefferan*, 828 F.3d at 493. By the same token, we award far less deference to a foreign plaintiff who opts to file suit outside his home forum. *Stryker*, 28 F.4th at 737 (affirming the district court's decision to give a foreign plaintiff's choice of forum "little deference"). Yet these assumptions, it bears reminding, are simply "helpful tools," not "oppressive" commands. *Jones*, 920 F.3d at 1094. A United States citizen who has long resided abroad, for instance, may be less deserving of deference than one living stateside. *See id.* at 1094–95. And a foreign plaintiff's desire to litigate in the United States may enjoy greater deference if motivated "by [] legitimate reason[s] such as convenience or the ability to obtain jurisdiction over the defendants rather than tactical advantage." *Hefferan*, 828 F.3d at 494. At day's end, the district court, as is so often the case, is best situated to make these assessments, and enjoys considerable latitude in doing so. *See Jones*, 920 F.3d at 1095.

The district court did not abuse its discretion in awarding minimal deference to Martinez-Porte's choice of forum. Martinez-Porte initiated this suit outside of his home country, meaning he was not entitled to a presumption in favor of his forum selection. *Zions First Nat'l Bank v. Moto Diesel Mexicana, S.A. de C.V.*, 629 F.3d 520, 525 (6th Cir. 2010). True, he explained why

he believed it would be more convenient to litigate this case in Ohio, emphasizing the ability to exercise jurisdiction over defendants. Considering those points, the district court conditioned its dismissal on defendants consenting to service of process in Mexico, thereby assuaging any jurisdictional concerns. With Martinez-Porte's primary reasons for choosing venue in Ohio having fallen away, the "assumption that a United States court is most convenient . . . does not hold true." *Jones*, 920 F.3d at 1095.

Martinez-Porte offers several points in rebuttal. He asserts that the district court gave his choice of forum "no deference." In truth, the district court, in light of Martinez-Porte's foreign citizenship, awarded his selection "minimal deference," R. 18 PageID 1147, a decision that rests on solid precedential ground, *Stryker*, 28 F.4th at 737; *Jones*, 920 F.3d at 1094–95; *Prevent USA*, 17 F.4th at 660–61. He likewise faults the district court for requiring him to bear the burden of demonstrating why his forum choice was reasonable. Again, the record says otherwise; the district court explained that defendants satisfied their burden of proof on all forum non conveniens issues.

Lastly, Martinez-Porte, invoking *Zions* and *Duha*, faults the district court for failing to defer to his choice of forum without first making an express evidentiary finding that litigating this suit in Ohio would "vex or oppress" defendants. He misreads both cases. A district court "need not make an explicit finding that proceeding with the suit in the United States would be oppressive or vexatious." *Zions*, 629 F.3d at 525; *see also Duha*, 448 F.3d at 875 (same). Instead, the district court must merely assess whether Martinez-Porte's forum choice would be disproportionately inconvenient to defendants. *Zions*, 629 F.3d at 525. The district court did just that, concluding that it would be far more convenient to litigate this dispute in Mexico, particularly in light of the volume of relevant evidence located there and the application of Mexican law. Tellingly, neither *Zions* nor *Duha* found an abuse of discretion merely because the court disagreed with the amount

9

of deference owed to the plaintiff's choice of forum.  In each instance, rather, the district court abused its discretion by failing to discuss whether heighted deference was appropriate.  *Zions*, 629 F.3d at 525 ("[T]he district court's ruling does not mention, and does not appear to have considered, the deference that a plaintiff's choice of forum is normally accorded . . . ."); *Duha*, 448 F.3d at 874 n.5 ("The district court did not clearly state precisely how much deference it was giving to Duha's choice of forum . . . .").  Nothing of the sort occurred here.  The district court "considered both sides' arguments" regarding the convenience of litigating in Ohio and, in the end, "concluded that [defendants] had the better of the arguments. That was not an abuse of discretion." *Stryker*, 28 F.4th at 737.

*   *   *   *   *

We affirm the judgment of the district court.